CASE 35—PETITION EQUITY—JUNE 5.

# Payne, &c., vs. Powell, &c.

### APPEAL FROM MEADE CIRCUIT COURT.

1. To make a valid gift of personal property, it is essential that it goes into effect and is completed at once; that it is not a mere promise, to be executed in future. Hence a delivery, actual or constructive, is essential to the validity of any gift, and there should be an acceptance by the donee; nor will a transfer by writing alone satisfy the requirement of delivery. (1 *Parsons on Contracts*, 234-5.)

1. A writing signed by a man purporting to make a gift of all his personal estate to three of his sons, is held to have been ineffectual, because there was no actual or constructive delivery of either the writing or the property by the donor, and no acceptance by the donees.

KINCHELOE & LEWIS,                                        For Appellants,

CITED—

4 *Mon.*, 503 ; *Cook's adm'r vs. Hendricks.*

2 *Vern.*, 473 ; *Clavering vs. Clavering* ; 1 *Br. P. C.*, 112.

1 *Atk.*, 625 ; *Broughton vs. Broughton.*

1 *Ves.*, 314 ; *Johnson vs. Smith.*

*Littell's S. C.*, 212 ; 1 *Vern.*, 100 *and* 464.

2 *Greenleaf on Ev.*, *pp.* 313, 314, *sec.* 297.

*MS. Opn.*, June 27, 1868 ; *Robinson vs. Robinson's executors.*

JOHN C. WALKER and

T. B. FAIRLEIGH,                                        For Appellees,

CITED—

*Bouvier's Law Dic.*, title " *Donatio.*"

2 *Blackstone, sub-div.* 8, *s. p.* 514, 515, *and note.*

4 *Met.*, 99; *Knott's adm'r vs. Hogan.*

5 *Mon.*, 170; *Waldrus's adm'r vs. Dixon.*

4 *B. Mon.*, 538; *Brown vs. Brown's adm'r.*

5 *Littell*, 12; *Duncan's adm'r vs. Duncan.*

3 *Littell*, 276; *Banks's adm'r vs. Marksbury.*

6 *Mon.*, 73; *Inlow, &c., vs. The Commonwealth for Thomas.*

4 *J. J. Mar.*, 139; *Butler's adm'r vs. Scofield.*

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT:

On the 8th day of August, 1860, Thomas Payne conveyed to his four sons, John H. Payne, James R. Payne, Peter K. Payne, and Charles C. Payne, the tract of land on which he lived, containing about two hundred and ten acres, for the consideration of four thousand dollars, and took their notes for two thousand dollars of the price, and gave them each five hundred dollars of the residue as an advancement out of his estate. Said notes, for the aggregate sum of two thousand dollars, remained unpaid till the death of Thomas Payne, which occurred in 1862.

On the 13th day of November, 1861, said Thomas Payne executed the following writing:

" Whereas I, Thomas Payne, have heretofore made a deed of conveyance to my four sons, John Payne, Thomas Payne, Peter K. Payne, and C. C. Payne, conveying to them my farm on which I now live, and which deed is of record in the Meade county court clerk's office; and inasmuch as I desire to make disposal of the balance of my property before my death, while my mind is sound: now, therefore, this article witnesseth, that for and in consideration of the sum of one dollar in hand paid, and the further consideration of the natural love and affection for my said sons Thomas, Peter K., and C. C. Payne, I have this day sold and conveyed, and do give unto my said

three sons, Thomas, Peter, and C. C. Payne, all and every description of my personal property, of every description, stock, horses, cattle, household and kitchen furniture, and, in short, every kind and description of personal property, negroes excepted; and I do hereby acknowledge the receipt of all rents due for the use of the farm, &c., previous to the sale to my sons, and forever acquit and discharge them from any liability for rents for the same for the aforesaid period; and I do acquit and forever discharge my three sons, Thomas, Peter K., and C. C. Payne, from any rents, or the use of any kind of property on the place in future.

"In testimony whereof, I have hereunto set my hand this 13th day of November, 1861.

"THOMAS PAYNE.

"Attest—WM. ALEXANDER."

In this suit between the administrator and heirs of Thomas Payne, sr., said Thomas, Peter K., and C. C. Payne, by a cross-petition, set up said writing, and claimed thereunder the entire personal estate of Thomas Payne, deceased.

The court, upon final hearing, adjudged "that nothing passed to the defendants, Thomas Payne, Peter K. Payne, and C. C. Payne, by reason of the writing filed with their cross-petition, &c., and dismissed the cross-petition; and from that judgment this appeal is prosecuted.

It appears from the testimony of Alexander, the attorney who drew said paper, and other evidence, that Thomas Payne retained possession of it for several months after its execution, and never did deliver it to either of the donees therein named; and that it was found at his death in a pocket-book of his which he kept about his bed in his last illness.

James R. Payne, a son of said decedent, testified that in May or June, 1862, his father placed said paper in his hands "for safe-keeping," and that he afterwards put it back in said pocket-book of his father's without his knowledge, for the fraudulent purpose of defeating the disposition of his property it purported to make; and John H. Payne, another son of the decedent, who was examined as a witness for the appellants, testified, somewhat inconsistently with J. R. Payne, that his father placed the paper "in J. R. Payne's hands, to be held by him until the old man's death, and then *to be delivered up to the boys for whose benefit it was made*."

This was the only evidence conducing to prove a delivery of the writing, actual or constructive; and as the possession of all the property remained with Thos. Payne till his death, the essential question is, whether the paper was effectual or binding for any purpose.

It is conceded that the writing was not a testamentary instrument, nor was the transaction such as to establish a gift *causa mortis;* but it is insisted, for the appellants, that there was such execution and *constructive* delivery of the paper as to vest the property in the appellants as a gift *inter vivos*, and we are referred to the cases of *Banks' adm'r vs. Marksbury* (3 *Littell*, 276), and *Somerbye and wife vs. Arden* (1 *Johnson's Chy. Rep.*, 240), and other cases, particularly the recent opinion of this court in the case of *Robinson vs. Robinson's ex'r*, as sustaining that position.

Neither of the cases cited are analogous with this. The point decided in the first named case was, that a deed, recorded in Virginia in 1773, operated to convey the title to a slave without actual delivery of the slave; and the court, in that case, said: "There is no doubt

that, to the completion of a parol gift, the *delivery* of
the thing is essential; but we apprehend this principle
does not apply to a gift by deed, if the deed be founded
upon a good consideration." And in the case of *Somer-
bye, &c., vs. Arden*, the point decided was, that a deed of
gift of a lot in the city of New York was effectual, upon
delivery to a trustee, therein appointed, to hold the title
for the beneficiary under the deed. And in the *MS.*
opinion in *Robinson vs. Robinson's ex'r*, it was held by
a majority of this court that the father, who was the
creditor of his son, might make a valid discharge of the
debt by a parol agreement, without actual delivery of the
son's note, which was withheld, without right, by a third
person.

But none of the cases referred to, nor any other au-
thority of which we are aware, contravenes the general
rule, that, to make a valid gift of personal property, it is
essential that it goes into effect and is completed at once;
that it is not a mere promise, to be executed in future.
Hence a delivery, actual or constructive, is essential, to
the validity of every gift, and there should be an accept-
ance by the donee. Nor will a transfer by writing alone
satisfy the requirements of delivery. (1 *Parsons on Con-
tracts*, 234, 235.)

According to the testimony of James R. Payne, he was
simply the holder or custodian of the paper for his father,
without authority to deliver it; and if his statements are
disregarded, and those of John H. Payne adopted, there
is still no evidence of an acceptance of the gift in the
lifetime of Thomas Payne, even if such a prospective
transfer in writing was sufficient to constitute a valid
constructive delivery of the property.

But it is difficult to reconcile the evidence in this case
with an intention on the part of Thomas Payne to make

an irrevocable or binding disposition of his personal property before his death.   And whatever may have been his desire or intention as to its ultimate disposition, as he failed to execute any purpose to vest the property in the appellants in either of the modes recognized by law, we must adjudge that, after his death, it came legally to the hands of his administrator as assets of his estate.

Wherefore, the judgment is affirmed.