HENRY OWINGS, APPELLLEE, v. FIRST NATIONAL BANK,
APPELLEE; HENRY SCHMIDT ET AL., APPELLANTS.

FILED DECEMBER 4, 1914.   No. 17,838.

Deeds: DELIVERY. Plaintiff's wife was the owner of a certain tract
of land near Johnson, in Nemaha county. She was taken sick
with an incurable disease at Sterling, Colorado. During her ill-
ness, and something over a month before she died, she gave
to her husband a deed to the land, executed about six months
before that time, with written instructions to deposit it in a
local bank, and upon her decease to have it recorded. She never
countermanded the instructions. After her decease, plaintiff re-
ceived the deed from the bank and recorded it. *Held* a sufficient
delivery to pass title to him.

APPEAL from the district court for Nemaha county:
JOHN B. RAPER, JUDGE. *Affirmed.*

*E. A. Wunder, F. G. Hawxby* and *John C. Hartigan,*
for appellants.

*Quackenbush & Neal* and *Kelligar & Ferneau, contra.*

REESE, C. J.

This is an action brought by plaintiff, Henry Owings,
against the First National Bank of Johnson, Nebraska, to
recover the sum of $5,129.67, the proceeds of the sale of a
tract of land, described in the pleadings, but the description
of which need not be stated here. The land was for-
merly owned by Lizzie E. Schmidt, who was later married
to Henry Owings. They went to the state of Colorado,
and after their marriage there located in the city of Ster-
ling, in that state. Mrs. Owings' health failed, and it be-
came apparent that she was in a precarious condition. On
the 28th day of June, 1911, Mrs. Owings executed a war-
ranty deed to her husband, conveying the land in question
to him, and placed it in a trunk in the house, and kept it
until the 2d day of December, of the same year. At that
time it was apparent that she could not recover, and that

97 Neb. 17

the date of her dissolution was not far distant, her malady being consumption. She was confined to her bed, and called for the deed to be brought to her. She then obtained pencil and paper and wrote the following instructions: "Sterling, Colorado, Dec. 2, 1911. In case of my death, give this deed to my husband, Henry Owings, to be recorded so my property is his. I am in poor health and no hopes of ever getting well. He is the only provider I have got. Mrs. Lizzie Owings, Sterling, Colo." She handed the deed and the above described memorandum to her husband, requesting him to place them in a local bank at Sterling, which he did. Mrs. Owings died on the 7th day of January, 1912. The second day after her death, plaintiff called at the bank and received the deed and memorandum of instructions, above copied, as well as some money on deposit, and made preparations for returning to Johnson, Nebraska, with the remains of his deceased wife. Prior to her decease, she, with her husband, had negotiated the sale of the land to one J. George Hahn for the sum of $5,640, and on the 11th day of December, 1911, with plaintiff, executed a warranty deed to the purchaser, which was deposited in the First National Bank of Johnson, in this state. Prior to this time, and on the 2d day of December, 1911, a written contract of sale was made with Hahn for the sale of the land at the price of $5,640, $400 of which was paid in cash, the remainder to be paid on the 1st day of March, 1912, or $2,500 to be then paid, and the remainder on time at the option of the purchaser. Instead of accepting the time option, Hahn paid into the bank the whole amount, and accepted the deed, with another one executed by plaintiff.

Mrs. Owings left no child, nor father, nor mother, surviving her, but she had two brothers, Henry Schmidt and Charles J. Schmidt, who demanded one-half of the money in the bank as the heirs of Mrs. Owings. The bank refused to pay the money to either claimant, when this action was brought against it by plaintiff for the whole amount. The bank filed the statutory affidavit to the effect that it held no claim on the money, but that it was

demanded by the claimants, and asked to be protected. The court ordered the brothers to intervene and set up their claims by a day fixed by the court, which they did, contending that the deed from Mrs. Owings to her husband did not convey any title to him for want of delivery; that the sale of the land to Hahn was of her property; and by reason of their relationship to her they were entitled to one-half of the fund under the provisions of the statutes of descent in this state. It appears that Henry Schmidt held a note against his sister, Mrs. Owings, for the sum of $1,019.25, growing out of the settlement and adjustment of an estate to which the land formerly belonged, and which note Mrs. Owings directed should be paid at the time she handed the deed to plaintiff at Sterling. There is no question as to this sum of money, plaintiff having agreed at the trial that Henry Schmidt should receive it out of the fund. The cause was tried to the court without the intervention of a jury, when a finding and judgment was entered, giving the $1,019.25 to Henry Schmidt, and the residue to be paid by the bank to plaintiff. Defendants, interveners, appeal.

The real, and indeed the only, question presented is: Was the deed from Mrs. Owings to plaintiff so delivered to him as to pass the title? The negotiations for the sale to Hahn had so far progressed that the contract of sale to the purchaser was signed on the day the deed was handed to plaintiff for deposit in the Sterling bank, but the contract and conveyance to Hahn were both signed by Mrs. and Mr. Owings. Considerable testimony was taken at the trial showing what occurred at the time the deed was sent to the Sterling bank, as well as declarations made to others by Mrs. Owings after the execution of the deed and before the 2d day of December, the day it was sent to the bank. The written memorandum was made by Mrs. Owings while on her sickbed, and she never was "down town" after that date and prior to her death. She never made any effort to countermand those instructions, but, so far as is shown by the record, she was at all times thereafter entirely pleased with what she had done. Had

she been able to go to the bank and deposit the deed with oral instructions as written, the case would fall within the rule of *Roepke v. Nutzmann*, 95 Neb. 589, and we are unable to see why, under her written instructions to the bank, they would not be of equal force. That case and *Brown v. Westerfield*, 47 Neb. 399, are decisive of this one, and 'it is not necessary that the law of those cases be further examined. We are satisfied therewith, and that the judgment of the district court is right and it is

AFFIRMED.

LETTON, ROSE and SEDGWICK, JJ., not sitting.