WILLIAM HORN ET AL., APPELLANTS, V. HENRY HORN ET AL., APPELLEES.

FILED APRIL 11, 1929. No. 26365.

*Dort, Cain & Dort,* for appellants.

*John Wiltse* and *Joseph C. Reavis, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD and DAY, JJ., and ELDRED and REDICK, District Judges.

ELDRED, District Judge.

The plaintiffs, William Horn and Anna Fehr, heirs of Emmi Horn, deceased, bring this action against the other heirs and representatives of the deceased, for the partition of an eighty-acre tract of land in Richardson county, Nebraska. The petition is in the usual form and alleges that Emmi Horn died January 16, 1927, testate, but that she failed to dispose of the property in controversy by her will, and therefore died intestate as to such property. The defendant Henry Horn answered claiming ownership of such property. No issue is raised by the other defendants. The trial court found in favor of the defendant Henry Horn and entered a decree quieting and confirming title in him. Plaintiffs appealed.

The deceased by her will disposed of all of her property not previously deeded by her. The will was executed the same day and immediately after the deed in question. A number of errors are assigned by the appellants in their brief, but in effect they all raise the same question; that is, that the evidence is not sufficient to sustain the finding and decree of the trial court. The real question involved is: Was there such a delivery of the deed from the deceased to Henry Horn for the premises in controversy as was necessary to transfer the title to him?

The deed from Emmi Horn to Henry Horn had not been filed for record at the time of grantor's death. At that time the record title to the premises was vested in Emmi Horn; the premises having been deeded to her by her daughter Louisa (Lucy) Horn. The deceased left surviving as her sole heirs four children, the plaintiffs, William Horn and Anna Fehr, Henry Horn and Emma Horn, defendants, and two grandchildren, Wilma Zentner and LeRoy Zentner, also parties defendant. Each of these heirs, by the terms of the will of the deceased, received a portion of her estate. The will specifically described the real estate, as well as some personal property devised and bequeathed thereby; but no mention was made of the real estate in controversy. The will contained no residuary clause.

On Friday morning, January 14, 1927, Emmi Horn was suffering from a strangulated hernia at her home where her daughter Emma Horn was caring for her. The plaintiff William Horn and the defendant Henry Horn, both of whom resided a few miles in the country, were each notified of their mother's serious illness. Henry arrived at his mother's home about 5 o'clock a. m., the same day. William arrived there about an hour before his mother's death, Sunday evening. About 5 o'clock a. m., Lawyer Wilhite arrived and prepared two deeds and a will, one of the deeds being the deed in controversy, and the other deed being to the daughter Emma Horn for some South Dakota property. In order to get the description of the property to be conveyed it was necessary to secure some papers from the safety deposit box in the Richardson County Bank. On account of the box being in the vault of the bank, secured by a time lock, the box could not be procured until about 8 o'clock. It was taken from the bank to the home by Henry Horn. About half an hour later an officer of the bank, Bert K. Baker, went to the residence of the deceased. It is undisputed that the deeds were executed prior to the execution of the will.

Appellants direct particular attention to portions of the

testimony of the witnesses Dr. Hustead and Bert K. Baker. Dr. Hustead, who was with the deceased several hours before any of the witnesses other than Emma Horn arrived on that morning, testified: "I asked Mrs. Horn why—what business she had that would detain her from going to the hospital. She said her business affairs were in such condition she wanted those fixed up; that she did not intend to go there to the hospital and die without a will and do without certain things, and have the attorneys get all of her money. That is exactly what she said. She said she was going to deed the property because she did not want them to fight over a will; that the deeds she made she wanted them to stand, and in case she got well she might probably change it if she recovered from the operation; but if she died she wanted things just as she had made it."

Dr. Hustead arrived at the home of Emmi Horn about 1:30 or 2 a. m.; remained until about 7 a. m.; went to hospital for a few minutes and returned with Dr. Shook about the time the deeds were being prepared by Lawyer Wilhite. There is nothing to indicate that Dr. Hustead held any conversation with Mrs. Horn about the disposition of her property after that time; hence, it must follow that whatever Mrs. Horn may have said to the doctor about her probable desire to change the deeds if she recovered from the operation were statements made several hours before the deeds were executed; while the statements testified to by other witnesses hereinafter mentioned were made at the time of or after the execution of the deeds.

With reference to the delivery of the deed the witness Baker testified that deceased gave him the deed; that he put it in the safety deposit box as soon as its execution was completed, and put the box in its place in the vault, and the deed was left there until it was turned over to Henry Horn as administrator of Mrs. Horn's estate. After the deeds were signed he asked Emmi Horn what to do with them and she told him to put them in her box and said what to do with the key. This was a safety deposit box and no one has a key but the owner of the box, and she said to give

the key to Miss Emma. He further testified: "I think Henry Horn had some papers in there. Whether he had the key or not, I don't think so, unless he got the key from his mother." Witness was not in the room where Mr. Wilhite and Mrs. Horn were when Wilhite was writing the deed and did not know what was said between them at that time. He was asked to go in and witness the deed. The deed was not handed to Henry, but was handed to the witness. He did not know what Mrs. Horn may have said to Mr. Wilhite at the time the will was executed about the deeds. He was not in the room at that time. Henry Horn called him at the house and met him at the bank. Henry had his mother's key and went in and got the box and went down to the house.

The testimony of this witness is not inconsistent with the decree of the court. It appears that Henry Horn had other papers in this safety deposit box where the two deeds executed were placed; that while the box in which the deeds were to be placed was to be in the custody of the bank of which Mr. Baker was an employee, neither the bank nor Mr. Baker were entrusted with the key to the box; but the mother, according to witness, directed him to deliver the key to Miss Emma, grantee in one of the deeds. The direction for the surrender of the key to the box to one of the grantees indicates that there was an intention on the part of the grantor to part with all control over the deed, and to place both deeds where they would be accessible to grantees. *In re Estate of Johnson,* 116 Neb. 686.

J. R. Wilhite testified: Went to the home of deceased about 5 o'clock a. m.; went down with Henry Horn. Emmi Horn asked him to write will and deeds. The deeds were prepared, executed and acknowledged before the will was made. "I asked her what I must do with the deeds, both deeds. She said: 'Give them to Bert Baker and let him keep them in the Richardson County Bank until after my death and then give them to the children'." And further: "Well, after we left the house, Bert Baker and I left the house, the last ones to leave the house, I thought I had both

deeds on the table, and I took it up and put it in my pocket, thinking I had both deeds, and went up in the office to put the seal on, I found I did not have but one deed. I then went down to the Richardson County Bank and Bert Baker was in there, and I asked him about the other deed, and he gave it to me; took it out of the box, and I took it up and put the seal on it and came back and gave it to him." Did not hear her tell Bert Baker what to do with the deeds; did not think he carried that message to Bert Baker; did not hear deceased say to Henry Horn: "Henry, this is your deed; read it and take care of it." Did not see him put the deed in the box; after deeds were made was not taking part in the conversation about the room; was working on the will.

According to this witness the deeds were to be left in the box at the bank until after the death of grantor and then delivered to the children. There appears to have been no reservation on the part of grantor of any control over them. The direction testified to by another witness that the key was to be delivered to Miss Emma further indicates an intention to relinquish all control over the deeds.

It is not essential to the validity of a deed that it should be delivered to the grantee personally. It is sufficient if the grantor delivers it to a third person unconditionally for the use of the grantee, with instructions to deliver to the grantee on death of grantor; the grantor reserving no control over the instrument. *Roepke v. Nutzmann,* 95 Neb. 589; *Dunlap v. Marnell,* 95 Neb. 535; *Owings v. First Nat. Bank,* 97 Neb. 257.

Emma Horn testified: "Just as she got ready to sign her name to this she looked at Bert Baker, and she said, 'This note and the deeds I want you to keep and deliver as soon as I die.' And Bert Baker looked at her, and said, 'Yes.' She went on signing her name to the note." Saw her sign the deed which Henry had; "After she read it and looked it over she called my brother Henry in from the opposite room, and Henry come in, 'What do you want, Mother?' 'I want you to look at this deed—see this.' She

handed it over to him to read, then he takes this deed and lays it in that box." Asked if her mother said anything further, she testified, "Yes, 'this was Lucy's wish I had to fulfil. Lucy wanted you to have this land.' She wanted Emma to have the South Dakota land and the $1,000 for taking care of her. And she says: 'Now I want to do this as Lucy wanted me to do it; I have fulfilled my promise.' And he looked at her and says, 'Yes.' After she had handed Henry the deed he put it in the box" himself, without any instructions. Witness was grantee in the other deed for 120 acres of South Dakota land.

Mrs. Ruth Horn testified: Was present when Bert Baker witnessed deed to Henry Horn. When Judge Wilhite got through with deed he handed it to Mrs. Horn. She took the deed and opened it up and closed and handed it to Henry Horn, and she said: "Henry this is your deed; read it and take care of it." Henry opened the paper up and read it and folded it back and placed it in one of his pockets. After that, when we were getting ready to go to the hospital, he took the deed from his pocket and placed it in the box; in their box that they kept at the bank. When Mrs. Horn said, "Henry, this is your deed; read it and take care of it," Judge Wilhite and Bert Baker were in the room. Mr. Wilhite was sitting at the table and Bert Baker was standing over toward the door by the kitchen. The will had not been signed at that time.

Henry Horn testified: Mr. Wilhite made out two deeds. I gave him the description from the deed of Louisa Horn. I read the deed and folded it up. I looked at the deed and check and put them in this hip pocket here, because I just had my sweater and my overcoat on. Then she asked me to pick up the rest of the papers and put them in the box. I cleaned up everything off the bed and table and I think I said, "This is too valuable for me to carry around." I put it in my box, in her box; her papers that she handed me; both of them; did not tell Bert Baker that I was putting the deed in the box. He was not there at the time I closed it. Judge Wilhite was there.

Complaint is made of the admission of the testimony of Henry Horn, the grantee in the deed; but disregarding his testimony as to any conversation or transaction with the deceased and as to delivery of the deed and how he came by it, the rule would not exclude his testimony as to what he did with the deed.

The fact that the deed was delivered by Emmi Horn to Henry Horn and by him put in his pocket, and then later by him placed in the box, accounts for the failure of Lawyer Wilhite to secure both deeds when he picked up the papers from the table to take to his office for the purpose of affixing his official seal. It seems probable that, at the time Wilhite was gathering up the papers he desired, Henry Horn had the deed to the land in controversy in his pocket, and that it was later put in the box.

That it was the intention of the grantor to make an absolute delivery of the deed is not only apparent from the testimony heretofore referred to, but other circumstances shown by the evidence tend to show the reason for the grantor desiring to favor the children Henry and Emma. A friendly relationship existed between the mother and these two children. They cared for her during her fatal illness; while the feeling between the mother and the daughter, Mrs. Fehr, and the son, William Horn, was not harmonious. That the feeling between the two last-named children and their mother was not friendly, from whatever cause, is conceded by them in their testimony, and is further demonstrated by the fact that, though William was notified on Friday morning of the serious illness of his mother, he did not go to see her until about an hour before her death on Sunday evening. But there was a further reason. It is uncontroverted that the property deeded to Henry as well as that deeded to his sister Emma had been conveyed by the daughter Lucy to their mother; and, according to the mother's statement, it was the wish of Lucy that the mother should convey the property to Henry and Emma, the mother remarking at the time of making the deeds that she had now carried out Lucy's wish.

The fact that the will contained no residuary clause, and that it did not purport to dispose of the land to which the deeds were made just prior to the making of the will, but did dispose of other real estate she appears to have owned, strongly indicates her intention to convey the title to the premises in controversy, and her belief that she had done so.

"Delivery is purely a question of intent to be determined by the facts and circumstances of each particular case." *Roepke v. Nutzmann*, 95 Neb. 589.

While there appears some conflict in the testimony of the several witnesses, it is more as to the details surrounding the transaction than as to their real import. If the case had turned upon the testimony of Dr. Hustead, it may be that the decree could not be sustained. Mrs. Horn may have thought early in the morning when talking to Dr. Hustead that she might want to change the deeds if she recovered, yet it is probable that, as the day advanced and she more fully realized the seriousness of her condition, she concluded to make a complete disposition of the property she was deeding. As previously pointed out, the statement made by the grantor to the doctor was prior to the execution of the deeds and prior to the making of the statements testified to by other witnesses. There is nothing in the testimony of any other witness inconsistent with an intent on the part of the grantor to make an unconditional delivery of the deed, without any right on her part to reclaim or recall it.

It is urged by appellants that it was the disposition of the mother to always retain control of her own property. That disposition is not inconsistent with the deeding of the property in question. Here was property which had been conveyed to her by Lucy, and as to which she felt under a moral obligation to dispose of according to Lucy's wish. In other words, as to the real estate deeded, she was fulfilling the trust conferred upon her, while as to the remainder of the property, as to which no trust relationship is shown to have existed, she did retain control thereof, only disposing of it by her will.

The trial court, with the advantage of observing the witnesses while testifying, found that there had been such a delivery of the deed as was sufficient to transfer the title to the land in controversy, and quieted the title thereto in the defendant Henry Horn. After due consideration, this court has reached the same conclusion. The decree of district court is

AFFIRMED.

Note—See Deeds, 54 L.R.A. 865; 9 L.R.A. n.s. 224; 38 L.R.A. n.s. 941; 8 R.C.L. 991; 2 R.C.L. Supp. 701; 4 R.C.L. Supp. 586.