## Sullenger et al. v. Baker et al.

## Same v. Lawrence et al.

Dec. 17, 1943.

C. H. Wilson and C. C. Grassham for appellants.

Charles Ferguson for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

The above-captioned appeals are from judgments dismissing petitions filed by a brother and two nephews of B. L. Sullenger, deceased, attacking on the grounds

of lack of consideration and non-delivery, deeds executed by him and recorded the day following his death, purporting to convey separate tracts of land to his nieces, the appellees, Mrs. Baker and Mrs. Lawrence, who are children of another living brother.

Sullenger was a bachelor, both the appellees had visited him at intervals, and one of them had assisted him in the care of his insane sister and aged mother who resided in his home. Copies of the deeds were not filed, and the record fails to show a valuable consideration for their execution.

It is argued in behalf of appellants that in the absence of a valuable consideration for their execution, the deeds were void. But, while it has been stated that a consideration is essential to the validity of a deed, the generally accepted rule is that, as between the parties, their heirs or privies, a deed is good without consideration, which, after all, is but another way of saying that a person in the possession of his faculties may give what he owns without regard to the wishes of those who are without legal demands against him. C. J. S., vol. 26, Consideration, sec. 16 page 189; Tartar v. Eaton et al. 282 Ky. 219, 138 S. W. 342; Saylor v. Saylor, 282 Ky. 246, 138 S. W. (2d) 316.

The sole remaining ground on which the deeds are attacked, namely, that they were not delivered, within the legal meaning of that term, requires an examination of the testimony of the only witness cognizant of the circumstances under which they were executed. Amry M. Davis, postmaster, notary public, and friend of Sullenger, testified that at Sullenger's direction he prepared the deeds, took his acknowledgement thereto, kept them during Sullenger's remaining lifetime, and recorded and delivered them to the grantees the day following Sullenger's death. Asked by appellants' counsel what Sullenger had said about the deeds when he left them with him, the witness stated: "A. He said to me, he would like to dispose of his property while he was living for the time would come when he couldn't have his say about it, and he wanted to deed this land so that it would be fixed and that the parties would come into possession of it at his death, he wanted control of it as long as he lived, and at his death, he wanted me to take these deeds and have them recorded, and placed in the grantees' hands, meaning Mae and Mildred. I had

both deeds, Judge, he said if he should live longer than I did he wanted my wife to give him the deeds. He didn't want anyone to know where they were except me and my wife. That's all I know to tell. I kept these deeds and at his death I had them recorded and gave them to the girls just as he had requested." Asked if Sullenger had enjoined secrecy as to the existence of the deeds and the place where they were to be kept, the witness answered: "Yes, at that time he did, but later on he told me that Mae understood his business but he did not expressly say that she knew about the deeds, only just said Mae understood his business."

Asked if Sullenger had afterward discussed the matter with him, the witness testified: "Well, he afterwards spoke about the deeds and asked me if I was taking good care of them. I suggested that he take them and place them in the bank, but he said, 'No, he didn't want to place them in the bank.' That he had trusted me with them and left them in my care and he wanted me to carry out his wishes."

Because of the importance attached to it by appellants, we quote the following from the testimony of the same witness:

"Q. Mr. Davis, why did Mr. B. L. Sullenger ask that these deeds be delivered back to him in the event you predeceased him? A. I couldn't say what his intentions were. He never told me why, that was just his request that if I died before he did that he wanted my wife to give the deeds back to him.

"Q. Mr. B. L. Sullenger had the right to take up these deeds, or either of them from you at any time during his lifetime did he not? A. Yes, they were his not mine.

"Q. Mr. Sullenger did take up two wills which you had written for him and which were left in your keeping did he not? A. Yes he requested them and if he had asked for the deeds I would have given them to him.

"Q. About how many times did Mr. B. L. Sullenger ask if you were keeping the deeds safe? A. I couldn't say. Two or three times, possibly two or three times."

Cross-examined by appellees' counsel, the witness testified:

"Q. Did Mr. Sullenger reserve any right to demand of you the return of these deeds to him? A. Not of me, he did of my wife in case of my death, he would demand them of her. He told me to tell her—he told me to tell my wife—in case I passed away first he wanted her to deliver the deeds to him.

"Q. Did he say, or indicate, that he would ever call on you to surrender the deeds? A. He did not.

"Q. Your duty then was without any restraint whatever? A. Yes, I was in duty bound, to keep them in safe keeping and not let anyone get ahold of them and after his death have them recorded and deliver them to the grantees.

"Q. You carried out his instructions exactly? A. Yes. No one knew where I kept them but my wife and me, and after his death I took them and had them recorded and gave them to the girls."

Appellants' counsel quote the following excerpt from our opinion in Mason's Guardian et al. v. Soaper, 232 Ky. 525, 23 S. W. (2d) 956, which is quoted in the case of Todd et al. v. Williams' Adm'x, 264 Ky. 788, 95 S. W. (2d) 593, 595: " 'Whether or not an instrument is testamentary in character depends upon the intention of the maker. The general rule almost universally followed is that, when a deed is delivered to a third person or depositary with the direction to the latter to hold the deed during the lifetime of the grantor, and upon the latter's death to deliver it to the grantee, and the grantor intended at the time of the delivery to the third person or depositary to part forever with all right to recall or control the deed, such delivery is effectual and valid and passes a present interest in the property, though the enjoyment of it be postponed.' "

They contend, however, that the testimony of Davis discloses that Sullenger intended to and did retain control over the deeds, as well as the possession and control over the land, and that appellants are accordingly entitled to the relief sought under the rule that where a donor retains full control and ownership of the subject of the gift to take effect at his death, the gift passes no right or title to the donee. But we are unable to agree, either with such a construction of the testimony, or with an interpretation of the rule which would render the rule applicable.

The right of Sullenger to require a return of the deeds in the event Davis predeceased him, obviously was reserved to enable him to procure another person to discharge the duties imposed, and but emphasizes his fixed purpose that the deeds should at all events be delivered. The supposed right to recall the deeds for any other purpose was but the product of the witness' opinion—not an actuality shown to exist by anything stipulated or stated by Sullenger. Couch et al. v. Hoover, 18 Tenn. App. 523, 79 S. W. (2d) 807; Beasley v. Beasley, 177 Miss. 522, 171 So. 680; Wilcox v. Hardisty, 60 Cal. App. 206, 212 P. 633; Adams v. Harris et al., 118 Wash. 189, 203 P. 48. While the requirement that in order to be effectual, a delivery to a third person of a deed to be subsequently delivered to the grantee must be under such circumstances as to deprive the grantor of the right to recall, except for a violation by the grantee of a condition, has frequently been stated in unqualified terms, it seems to us that the controlling factor to be considered in its application is the intention of the grantor, and that the fact that he might have been able to regain the physical possession of the instrument should not affect the validity of the delivery if his intention at the time was that the delivery should be irrevocable so far as the right of the grantee to receive the title to the propery, and eventually its enjoyment, was concerned. Munro v. Bowles, 187 Ill. 346, 58 N. E. 331, 54 L. R. A. 865; Sneathen et al. v. Sneathen, 104 Mo. 201, 16 S. W. 497, 104 Am. St. Rep. 326.

Some courts, apparently regarding the accomplishment of the grantor's manifested design as more desirable than the enforcement of technical rules which would have defeated it, have held that although the power to recall an instrument delivered under such circumstances was expressly reserved, the failure of the grantor to exercise the power sealed the transaction and put it beyond the power of others to attack it. Daggett v. Simonds, 173 Mass. 340, 53 N. E. 907, 46 L. R. A. 332; Blanchard v. Sheldon, 43 Vt. 512; Ruggles v. Lawson, 13 Johns., N. Y., 285, 7 Am. Dec. 375. But, however logical the decisions last cited may be, we deem it unnecessary in the decision of this case to do other than emphasize our conclusion that the reservation by Sullenger of the right to receive the deeds in the event Davis died before he did, the purpose of the reservation being, obviously, not hostile but to insure the grant, was not

sufficient to defeat the accomplishment, otherwise unassailable, of his intentions.

Judgment affirmed.

Whole Court sitting.