## Cook et al. v. Hagan et al.

Jan. 15, 1946.

Rodes, Harlin & Willock and John B. Rodes for appellants.

W. D. Gilliam and Noel F. Harper for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

This is an action to set aside a deed on the grounds of mental incapacity, inadequacy of consideration, and fraud.

On October 24, 1942, W. N. Cook and his wife, residents of Allen County, executed and delivered to Minnie Pauline Hagan, the wife of J. C. Hagan, a deed to one hundred acres of land for the consideration of $3500. The one hundred acres of land was the greater portion of the farm which W. N. Cook owned. Eighteen acres of the farm were reserved for a son, who is one of the appellants here.

W. N. Cook died on January 3, 1943, and his wife died in June 1943. This action was brought on July 20, 1943, by the three children of Mr. and Mrs. Cook.

W. N. Cook was a substantial citizen of Allen County, having been elected to the offices of county judge and sheriff of that county. He was seventy-six years of age at the time of his death. According to the evidence his health began to fail in 1941, and in the early part of 1942, his condition was such that he was compelled to remain in bed at all times. The testimony of his two sons, John and Bird Cook, indicates that he was totally helpless, could not feed himself, and could not talk plainly. His lower legs were bent underneath his hips and could not be straightened. His arms were bent and stiff at the elbows and could not be straightened. He was the subject of mental illusions and was entirely dependent upon others to take care of his personal needs.

Doctor John W. Meredith and Doctor A. G. Cosby testified that he was suffering from cerebral arteriosclerosis in an advanced stage, and from Parkinson's disease, which is commonly known as palsy. This medical testimony shows that he was in an "advanced state of mental degeneration." Although Doctor Cosby did not see Mr. Cook for several months prior to the execution of the deed, and Doctor Meredith saw him last in June 1942, their testimony indicates that the diseases from which he was suffering were permanent and were not subject to temporary improvement.

Just prior to the time the deed was executed Mr. Hagan had sold his farm in an adjoining county and desired to purchase one in Allen County. He contacted Mr. E. A. Berry, who had heard that the Cook farm was for sale. Mr. Hagan and Mr. Berry went to the Cook farm on Tuesday prior to the execution of the deed on Saturday and discussed terms of sale with Mr. and Mrs. Cook. On the following day an option was executed and $500 was paid in order to bind the bargain. Mrs. Edna Cole, a daughter of the Cooks, wrote a note to an attorney requesting that the contract for sale be drawn up. Her son assisted in the survey of the farm which was made immediately. On Saturday the deed was executed.

Herbert Moore, the County Court Clerk of Allen

County, took the acknowledgments to both the option and the deed, and for this purpose went to the Cook farm. He testified that at Mr. Cook's request he signed Mr. Cook's name to both the option and the deed, and he also endorsed the check for the purchase price for Mr. Cook in the same manner. He states that Mr. Cook was physically unable to write his name but that he read and explained both the option and the deed to him. He states that Mr. Cook knew him, and in his opinion he was mentally qualified to execute the papers. He further stated that he felt certain that Mr. Cook knew what the transaction was about because he discussed the reservation of the eighteen or twenty acres that was not to be included in the conveyance, and discussed with the purchaser the question of whether or not a road was a public or private one.

It is vigorously argued for the appellants that the consideration paid for the farm was wholly inadequate and that its value at the time of the sale was far in excess of the price received for it. The appellants John and A. B. Cook testified that in their opinion the farm was worth in the neighborhood of five or six thousand dollars. It was shown for appellants that in March 1943, Hagan sold this land to Berry at a profit of twelve hundred dollars, and this fact is urged as being persua-sive that the consideration was inadequate. However, it is common knowledge that during that particular period farm values were increasing, partially because of general conditions and partially because of the increased price of tobacco, which is the money crop of that section.

The appellees, while admitting the condition of Mr. Cook's health, claim that at the time the farm was sold the price paid was a fair one. Mrs. J. C. Tinsley, a neighbor and good friend of the Cooks, testified that she knew the Cooks had wanted to sell the place for some time. It is perfectly natural to assume that this is true because of the absence of the two sons, the physical condition of Mr. and Mrs. Cook, and their apparent lack of income. There was a mortgage on the farm which was paid out of the sale price, and, according to the testimony of neighbors, $3500 had been the asking price for the one hundred acres for some time, and $4000.00 for the entire one hundred and eighteen acres. Mrs. Tinsley testified that Mrs. Cook told her that she

had lost two sales and was glad that this one had been consummated. C. A. Gilliam, Cashier of the Farmers National Bank at Scottsville, testified that he was interested in the farm and that it was first priced to him at $4000, but that the Cooks later agreed to take $3500 if he would buy the one hundred acres only. He did not buy it.

Ben Roark was told by Mrs. Cook's sister that the Cooks desired to sell the land. He went to see the Cooks and testified that he found Mr. Cook perfectly rational, and discussed the country that Mr. Roark came from and the people who lived there. Mr. Roark further testified that in his opinion $3500 was a fair price for the farm. We quote from his testimony:

"Q. Did the Cooks receive a fair price for this land at the time they sold it? A. They received the amount that they had been asking for it for quite some time."

Under all the circumstances as are shown by the record we can not say that the price received for this farm was inadequate.

It is argued that the undue haste in the execution of the deed constitutes fraud. With this we can not agree. We feel that it is a fair statement to say that the evidence indicates that the Cooks had wanted to sell the farm for some time and that Mrs. Cook expressed satisfaction that the sale had been consummated. It does not appear to us that there was any particular haste in consummating the deal. The negotiations were opened on Tuesday, the option secured on Wednesday, and following completion of the survey the deed was delivered on Saturday. One of the appellants, Mrs. Cole, knew about the transaction although it is true the two sons did not learn of the sale until some ten days or two weeks afterward. This evidence as to the rush in securing the deed is the only evidence of fraud outside the claim that the consideration was inadequate and that Mr. Cook did not have sufficient mental capacity to know what he was doing. Mrs. Cook, while physically unwell, apparently had complete possession of her mental faculties. She was in a position to advise with her husband during all the time the parties were dealing with each other.

The question for determination is whether or not old age, combined with physical and mental disability,

is sufficient, without a showing of fraud or undue influence of some kind, to set aside a written instrument. In this case we have concluded that the consideration paid was fair and if this be true the Cooks were not over-reached. Nor are we satisfied that Mr. Cook did not understand the nature of the transaction. The chancellor found that he did and, at best, the evidence raises no more than a doubt, and this under our rule is not sufficient to overturn the finding of the chancellor.

In 9 Am. Jur. page 363, Section 16, we find this statement:

"Old age is not a ground for invalidating a contract, unless combined with weakness of mind and fraud or undue influence. Furthermore, it is the general consensus of judicial opinion that mental incapacity, whether it be due to mere weakness of mind or actual insanity, is not in itself a sufficient basis for obtaining the cancellation of a written instrument, unless the state of idiocy or imbecility complained of is such that it rendered the afflicted individual incapable of understanding the nature and effect of the transaction at the time the instrument was executed, in the absence of inadequacy of consideration of some other evidence of fraud, imposition, or over-reaching."

See also Woody et al. v. Davis et al., 237 Ky. 768, 36 S. W. 2d 360; Saylor et al. v. Saylor, 282 Ky. 246, 138 S. W. 2d 316; and Revlett v. Revlett et al., 274 Ky. 176, 118 S. W. 2d 150, and the authorities referred to therein.

Applying this rule to the facts in this case we can not say that Mr. Cook was incapable of understanding the nature and effect of the transaction or that the consideration was inadequate. Nor is there any evidence which would justify a finding that there was fraud in connection with the obtaining of the deed. Giving the chancellor's finding the weight to which it is entitled, we are compelled to affirm the judgment.

Affirmed.