## Moneypenny v. Moneypenny.

April 19, 1949.

W. J. Goodwin for appellant.

James W. Menefee for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER—
Affirming.

The appeal is from a judgment sustaining exceptions to a Commissioner's report and decreeing that appellant pay to appellee the sum of $20 per month as alimony. The judgment was entered on appellant's motion to exonerate him from the payment of any alimony in the future because of a change in the condition of the parties in the fourteen years which had transpired between the filing of the motion and the original judgment, which awarded appellee $40 per month for alimony and maintenance of an infant child then twenty years of age. The Chancellor referred the case to the Commissioner who heard the evidence orally. The Commissioner filed his report and recommended that appellant be exonerated from the payment of any alimony in the future. Appellant urges reversal of the Chancellor's decree mainly on the ground that the latter did not hear nor read the evidence presented to the Commissioner, therefore he should have confirmed the Commissioner's findings. It is asserted by counsel for appellant that "Neither side requested that the proof be taken down. Both sides relied upon the Commissioner both as to the evidence, the report and findings." Since the parties in the Lower Court were content to rely on the evidence as it was reported by the Commissioner to the Chancellor, we will treat the report as the complete bill of evidence in narrative form; but we will not treat the Commissioner's recommendations as binding either on the parties, the Chancellor, or this Court. To do so would be to give the decision of the Commissioner the effect of a decision of an arbitrator. Since a controversy may be submitted to arbitration only by following the formalities provided in KRS, Chapter 417, and since none of these formalities have been observed, the recommendations of the Commissioner were merely advisory, and neither party had the right to require the Chancel-

lor to enter judgment in conformity thereto. It now is too late to complain that the Commissioner failed to make a full report of the evidence, if he did so fail. Such complaint should have been made to the Chancellor before submission to him for final judgment. Thus we are led to a review of the evidence as set forth in the Commissioner's report to determine whether the Chancellor erred in his final award. If the evidence presents no more than a doubt as to the correctness of the Chancellor's judgment, it must be affirmed in accordance with the rule in equity cases. Cook v. Hagan, 301 Ky. 346, 192 S.W.2d 97.

The Commissioner's report does not show the salary appellant was making at the time of the original award of $40 per month but counsel for appellee asserts in his brief that at the time his salary was less than it is at the present. Appellant does not deny this statement but brushes it aside with the assertion, "The question of what appellant's earnings were at the time the agreement which was incorporated in the judgment of May 21, 1933, nearly fifteen years ago, is immaterial." We cannot agree with appellant that his earnings at the time of the original award are immaterial, but the fact remains that we can make no comparison of his earnings then and now because the record does not disclose what his earnings were in 1933. The only basis for the modification of an award once entered is a change of the condition of the parties from the time of the original award to the time the modification is sought and comparative earnings are peculiarly pertinent where, as here, the amount of the original award was fixed by the Chancellor pursuant to agreement of the parties. The basis for determining the amount of an award of this character is the earning power of the husband. The Commissioner's report does show that at sometime previous to the time appellant filed his motion to be exonerated from the payment of any award, he had been working in the Commercial Department of the Louisville & Nashville Railroad Company at a salary of $283.83 per month, but because of ill health he was transferred to a position as mimeograph operator at a starting salary of $158.74 per month, which was raised to $190.38 per month on September 16, 1947. Since the original decree he has remarried, and at the time of submission of the

case was living with his second wife's parents. Appellee owns a house containing five rooms and a basement. She occupies the basement, and rents the upper part of the building for the sum of $86.67 per month. There is a mortgage on this property to secure the balance due on a loan, which balance amounts to the sum of $3,110.34. According to her testimony the payments on this loan amount to $35.30 per month; gas and light bills average $9 per month; fire insurance $3 per month; and heating bills average $6 per month. These expenses total $56.60 per month, which leaves her $30 per month net income from the property. This property constitutes her sole estate. At the time of the trial she held a position as Deputy County Indexer, for which services she received $134.80 per month after withholding tax had been deducted. Her daughter and two grandchildren live with her. Her son pays her the sum of $40 per month for the care of the two grandchildren, but she is required to engage a housekeeper at $70 per month to care for the children while she is at work. Her grocery bill averages $70 per month, doctor and medical bills $15 per month, and holding a political position, she has committed herself to contribute the sum of $4.40 per month for campaign funds. A portion of the $3,110.34 which she owes on her property was given by her to her son to make repairs to the roof of his house. In recommending that appellant be exonerated from future payments the Commissioner reasoned as follows:

"While we must consider rather sacredly the judgment of a Court and consider the needs of the woman it is evident that with a reduction in income on defendant's part from $283.83 a month to $190.30 per month gross that the defendant cannot pay the amount he has been paying. We must at the same time consider that not only the earning capacity of the defendant but his physical condition which evidently is not improving, and no one can foresee how long or short a period of time, may decrease which means a lessened income."

KRS 403.060(1) provides:

"If the wife does not have sufficient estate of her own she may, on a divorce obtained by her, have such allowance out of that of her husband as the court considers equitable; * * *."

In construing this section of the statute the Court said in Barnett v. Barnett, 292 Ky. 840, 168 S.W.2d 17, 18:

"The interpretation of 'sufficient estate of her own' is that it shall be of such character and amount as will yield income or profits sufficient for her (the wife's) comfortable maintenance in a style suitable to her social standing. What her standard of living would have been had she remained the wife of the defendant is an important consideration. Kelly v. Kelly, 183 Ky. 172, 209 S.W. 335. The statute does not contemplate that no allowance shall be made out of the husband's estate if the wife could maintain herself by consuming her principal. As held in McAllister v. McAllister, 1 Ky.Opin. 333: 'It is then the duty of the court, upon decreeing a divorce of the wife from the bond of matrimony, to ascertain what are the annual profits of her estate, and what will be required for her maintenance in a style suitable to her condition in life; and if her profits are insufficient for the purpose, then the husband should be made to supply the whole deficiency or such part thereof as in view of the value of his estate should be equitable, and if by reason of the insufficiency of the husband's estate it would be inequitable to supply the whole deficiency, then the allowances should be graduated according to the means of the husband and his ability to pay'."

And in Collins v. Collins, 279 Ky. 139, 130 S.W.2d 37, 38, the Court said:

"Alimony is that provision which the law makes for the support of the wife in lieu of the husband's common-law obligation to support her if they had continued living together. (Citations.) A wife should not be denied alimony merely because she may be able to obtain employment and support herself. In fixing the allowance, her age, health, and means to support herself may be considered as well as the husband's income, earning capacity, health, age, and ability to labor, but she should not be required to assume the risks of illness and unemployment."

And in Fisher v. Fisher, 237 Ky. 823, 36 S.W.2d 635, the opinion reads:

"The fact that the former wife has an income from her labors and may be assisted financially by her sons, whom he has neglected and for whose welfare she has striven night and day, ought not to relieve him of his responsibilities altogether. It is not contended, nor could it be, that his remarriage relieved him of the legal and moral obligations resting upon him."

It is apparent from his report that the Commissioner considered appellee's earning power as a part of her estate within the meaning of KRS 403.060(1), supra. It is equally apparent from his judgment that the Chancellor did not consider such earning power to be a part of appellee's estate but, consonant with the authorities above quoted, he no doubt considered this as a factor in determining the amount of the award. The Commissioner likewise anticipated the probable total disability of appellant to commence at some future time. Such probability is not a sufficient cause for relieving the husband of the payment of alimony but may be considered as a factor in determining, as the Chancellor no doubt did, the amount to be fixed at the present time. If total disability occurs in the future, such will constitute a change of condition upon which appellant may apply to the Court for further relief but until and unless it does occur he may not be exonerated from the payment of alimony upon a mere possibility or probability. The condition of the parties at the present is that appellant is earning approximately $190 per month, and appellee's estate yields her a profit of approximately $30 per month without deducting anything for repairs to and maintenance of the structure of the house. We are of the opinion that the Chancellor correctly determined that appellant should continue to pay alimony in some amount, and $20 per month certainly is not excessive at this time.

The judgment is affirmed.