**Silas JACOBS et al., Appellants,**

v.

**ALCOHOLIC BEVERAGE CONTROL BOARD, etc., et al., Appellees.**

Court of Appeals of Kentucky.

March 1, 1957.

Funk, Chancellor & Marshall, Frankfort, D. Bernard Coughlin, Maysville, for appellants.

J. Thaxter Sims, Cynthiana, for appellees.

CULLEN, Commissioner.

James and Caroline Bonfield, who hold a retail malt beverage license for premises in Brooksville, made application for a distilled spirits and wine retail package license for the same premises. The application was denied by the Administrator of the Distilled Spirits Unit, but upon appeal to the Alcoholic Beverage Control Board an order was entered granting the license. At the hearing before the board a number of public officials of Brooksville and of Bracken County appeared in protest to the issuance of the license, and they appealed from the board's order to the Franklin Circuit Court. The order was affirmed by the circuit court, and the protestants have appealed to this Court.

■ The basis of the protest was that the Bonfields had been guilty of acts in the operation of their premises which would have authorized the revocation of their malt beverage license, and under KRS 243.450(1) (b) this constitutes cause for

refusal to issue a distilled spirits license. The protestants maintain that the evidence before the board showed conclusively that the Bonfields had been guilty of such acts, and therefore the order of the board, granting the new license, was not supported by any substantial evidence. KRS 243.570 (2) (c).

The alleged improper acts were: (1) Permitting the licensed premises to be disorderly, in violation of KRS 244.120; (2) selling alcoholic beverages to persons under the influence of alcoholic beverages, in violation of KRS 244.080; and (3) allowing minors to loiter in the premises in violation of a regulation of the board. The protestants introduced evidence of a fight and a cutting affray which appeared to have their origin in the Bonfield premises; of a person being violently thrown from the premises; of a sale of beer by a Bonfield employe to a "blacklisted" drunkard, in the alley behind the premises; of vulgar language used in the premises; and of children playing pool in the premises in the same room where men were drinking beer. They also gave testimony that the general reputations of the premises and of James Bonfield were bad.

Bonfield testified that the fight did not originate or occur in his premises; that the cutting affray, although originating in a dispute that began in his premises, took place on a farm some eight miles away, the following day; that on one occasion he had forcibly evicted some drunken patrons who were causing a disturbance, and they stood outside cursing; that his part-time employe frequently took beer home and he had no knowledge of the employe ever selling beer to a known drunkard; that he formerly had a partition between his bar and his poolroom, and at that time minors were permitted to play pool, but the partition was removed about one year ago and since that time there had been no minors in the place. The drunkard who was alleged to have been sold beer testified that Bonfield had never sold him any beer since he was "blacklisted."

Bonfield's brother and sister-in-law, and four other residents of the county, testified that Bonfield's reputation was good. Bonfield presented a petition signed by 220 residents of the county, stating that his reputation was good and asking that the license be issued.

Upon this record we cannot say that there was no substantial evidence to support the order of the board. The evidence for the protestants was primarily of isolated instances of improper conduct, and Bonfield presented an acceptable, although perhaps not very satisfactory, explanation for or denial of each of these instances. There was a direct conflict in the evidence as concerned reputation. We think the board acted within its powers in granting the license.

■■ The protestants maintain that the order should be set aside because of error by the board in placing upon them the burden of proof at the hearing. Ordinarily, error in assigning the burden of proof has been held prejudicial only in cases of trial before a jury, where the right to the closing argument is considered important. In a number of cases where the trial was before the judge without a jury it has been held that error in assigning the burden of proof was not prejudicial. See Saylor v. Saylor, 282 Ky. 246, 138 S.W.2d 316; Deep v. Farmers' Nat. Bank, 247 Ky. 801, 57 S.W. 2d 1002; Poole v. Johnson, 101 S.W. 955, 31 Ky.Law Rep. 168. We think a hearing before an administrative board may be considered comparable to a trial before a judge, as concerns the significance of the burden of proof. Furthermore, we have held that administrative boards are not required to follow strict technical rules of common-law procedure and their awards will not be disturbed because of mere irregularities in procedure, such as in the order of introducing evidence. See International Harvester Company v. Brown, Ky., 286 S.W.2d 920; Perry McGlone Const. Co. v. Shaw, 283 Ky. 84, 140 S.W.2d 829.

The judgment is affirmed.