## Hale v. Hale.

(Decided September 17, 1920.)

### Appeal from Campbell Circuit Court.

1. Gifts—Gift Inter Vivos—Delivery.—To constitute a valid gift inter vivos, the purpose of the donor to make the gift of the specified thing must be clearly and satisfactorily established, and the gift must be complete by actual, constructive or symbolical delivery, without power of revocation and without any future control of the gift by the donor and if the thing given is capable of manual delivery its possession must be transferred to the donee.

2. Gifts—Gift Inter Vivos—Declaration of Intention of Donor.— Declarations of the donor of his intention to make the gift or that he had made it, standing alone and unaccompanied by other facts, are insufficient to establish the gift though such declarations are relevant upon the issue as to whether the gift was made.

3. Evidence—Exceptions Because of Incompetency of Witness.—Exceptions to testimony because of incompetency of the witness will be deemed waived when the exceptor does not require the court to rule upon the exceptions.

4. Appeal and Error—Finding of Chancellor.—When the testimony creates only a doubt as to the truth of the issues involved the findings of fact by the chancellor will not be disturbed, but where the testimony as a whole leaves no doubt in the mind, or where

the chancellor's finding is against the preponderance of the evidence, his judgment based on his findings will be reversed.

FRANK V. BENTON for appellant.

L. J. CRAWFORD, MILLER OUTCALT and DUDLEY OUTCALT for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This litigation concerns the title to $500.00 par value United States liberty bonds; $3,000.00 par value Cincinnati Southern Terminal bonds; $1,000.00 par value Cincinnati Water Works bonds; one Buick touring automobile, and $500.00 in cash. It grew out of these facts. The appellant, and defendant below, Anna E. Hale, is the widow of, and also the executrix under the will of W. S. Hale, who died testate on May 1, 1918, a resident of Campbell county. The appellee and plaintiff below, Caroline C. Hale, is the daughter of the decedent by a former wife and as devisee under the will of her father she brought this suit against defendant in her personal and representative capacities to procure a settlement and division of the estate and to require defendant to report and account for the above property as a part of the estate of her decedent. The defendant answered, offering to account for and distribute under the terms of the will all of the property which she claimed came to her hands as executrix, which she alleged was only $92.68. She denied that her decedent owned any of the property described, at the time of his death, except the amount of cash which she reported. A reference to the master commissioner was made for the purpose of taking proof as to claims against the estate and as to the ownership of the property in contest and in due time he filed his report with the evidence heard by him, in which report he held that decedent died the owner of the Cincinnati Southern Terminal bonds and the Cincinnati Water Works bonds and the cash which defendant admitted, but he further reported that before his death the decedent gave and delivered to defendant the Buick touring automobile. Both parties filed exceptions to the report, the plaintiff objecting because the commissioner failed to report the automobile as a part of the assets of the estate, while defendant objected because the commissioner reported the bonds as belonging to the decedent and constituting a part of his estate. The court, upon trial of the exceptions, overruled all of them and confirmed the report and

then adjudged that the bonds of the total par value of $4,000.00 were the property of the decedent at his death; that it was necessary to sell a portion of them to pay costs and some proven claims against the estate and that the bonds be sold by the master commissioner, who was directed to pay out of the proceeds the cost of this litigation and the claims allowed against the estate and to divide the balance equally between plaintiff and defendant, the will providing for such division after the payment of debts. It was, however, further provided in the judgment that defendant should have the option to accept one-half of the bonds in kind after the sale of a sufficiency to pay the costs and debts. Complaining of the judgment, defendant, in her individual capacity, has prosecuted this appeal.

The sole question presented for determination is: Whether the testimony is sufficient in law to establish an *inter vivos* gift of the bonds by the husband to his wife, the defendant. The undeviating rule with reference to gifts *inter vivos* is that "there must be an intention (by the donor) to transfer title to the property, as well as a delivery by the donor and an acceptance by the donee. Mere intention to give without delivery is unavailing and delivery is insufficient unless made with an intention to give." 12 R. C. L., page 932. Cases from almost every state in the Union are cited in note 18 to the above text dealing with the various questions concerning this character of gift as well as those *causa mortis,* the latter not affecting the merits of this case. The above general rule with reference to *inter vivos* gifts has frequently been approved by this court. Stark v. Kelley, 132 Ky. 376; Foxworthy v. Adams, 136 Ky. 403; Dick v. Harris, 145 Ky. 739; Taylor v. Purdy, 151 Ky. 82; Reynolds v. Thompson, 161 Ky. 772; Goodan v. Goodan, 184 Ky. 79, and other cases cited in those opinions. It is equally true that since gifts of this character furnish a ready means for the perpetration of fraud, the evidence necessary to establish all of the essentials to complete them must be clear and convincing (authorities, *supra,* and 12 R. C. L., page 973). And while the declaration of the donor before the gift as to his intention to make it, and after the gift to the effect that he had made it, are relevant testimony upon the issue, they are insufficient alone to establish the gift. (Reynolds v. Thompson, *supra*; Apache State Bank v. Daniels, 32 Okla. 121; American Annotated cases, 1914A 520, 40 L. R. A. (N. S.) 901, and 20 Cyc. 1225.)

In the light of these well settled principles of law, let's examine the testimony and see if it measures up to the legal requirements for the establishment of this character of gifts. Before referring to the testimony of the witnesses introduced, it might be well to make a brief statement of the circumstances and conditions surrounding the parties and antedating the gift. The decedent was divorced from his first wife in 1907. They had two children, the plaintiff and a grown son, but the wife and the two children seem to have left Cincinnati, Ohio, where the parties resided, leaving the deceased alone to fight life's battles. He was partially paralyzed in one side, necessitating his walking with a cane and with some difficulty. Defendant had been married before, but she had also procured a divorce and for four or five years prior to June 5, 1917, she owned and operated an apartment house, in which the decedent boarded. Defendant was a chiropodist and had an office in Cincinnati, which was shared by Miss Dora E. McCullum, who was a hair specialist, and the two operated together as partners under the firm name of Cooper & McCullum. The partnership had existed some four or five years and at intervals the decedent would visit the offices occupied by the partners and spend at least some of his time there. On the 5th day of June, 1917, defendant and the decedent were married and the couple located in the town of Bellevue, Kentucky, where they bought property and occupied it until the death of the husband, which as stated occurred May 1, 1918. Several years prior to the death of decedent, his father, Samuel J. Hale, died testate and by his will he devised certain property to the Union Savings Bank and Trust Company of Cincinnati, Ohio, in trust for the benefit of his four children, one of whom was the decedent, and required his trustee to manage and hold it for ten years, after which it should be divided equally between his four children. The ten years' postponement for the division of the property, required by the will, expired January 25, 1918, and the bonds here involved are a part of the property which decedent obtained under the terms of his father's testamentary bounty.

Upon the direct issue as to the gift Miss McCullum testified in substance that upon one occasion in the latter part of February or the first part of March, 1918, the exact date the witness not being able to fix, the decedent appeared in the rest room, composing a part of the suite occupied by the firm of Cooper & McCullum, and brought

with him a package of papers and delivered them to his wife, stating at the time that they were some bonds, and that he gave them to his wife and requested her to put them away and take care of them, saying, "they are yours;" that the bonds were unwrapped and partially unfolded upon a table in the room, but witness did not examine them to see the character of bonds, their denomination or amount. Being asked what decedent said when he delivered the papers to defendant, which he said were bonds, she answered: "He said 'here are your bonds, they are yours and I want you to take them and take care of them; and put them away and keep them.'" Witness further testified that prior to the transactions above testified to, decedent stated in substance that when he came into possession of the property from his father's estate, he expected to give it to the defendant as partial compensation for the many acts of kindness which she had done him and her attentions toward him, but for which he would have long since "been out in Spring Grove Cemetery." Witness further testified that later in the day and after decedent left the office, defendent took the papers, which were delivered to her, and put them in the safe, from which place she removed them shortly thereafter.

Maud Reardon, a sister of defendant, testified that she came into the office upon the occasion testified to by Miss McCullum, just after the latter had left the room and before the departure of decedent, and heard him state in substance what the witness McCullum testified to and the decedent then stated that the bonds were of the value of $4,500.00 and that he gave them to his wife, stating that "he wished he could do more for her, that she had saved his life." Defendant, whose deposition was excepted to but which exceptions were not acted on, testified that deceased made her house his home since 1914 and that he delivered to her as a gift the bonds in question on the 6th of March, 1918, and that she accepted them and kept them in her safe for about a week, when she deposited them in a safety box, rented from the Central Trust Company in Cincinnati, from which place she took them on the 8th of April, following, for the purpose of selling a portion of them and paying off a mortgage which was upon the home in Bellevue; that she did sell the United States liberty bonds of $500.00, but changed her mind with reference to selling the others and deposited them with the Fifth-Third National Bank of Cincinnati, Ohio, in a box, which she rented in her name.

While defendant, under the provisions of section 606 of the Civil Code, was incompetent as a witness to the transactions, about which she testified, her incompetency might be waived, and it has been frequently held by this court that an objection to incompetent testimony will be deemed as waived unless the objector insists upon the objection being acted upon by the court. Skidmore v. Harris, 157 Ky. 756; Keeton v. Mahan, 177 Ky. 85, and Goodan v. Goodan, *supra*. It is coincidental that in the last case referred to the testimony of the donee of a gift *inter vivos* was objected to upon the same ground as was that of defendant in this case, but the objection was not acted upon by the court and this court held that it was waived.

Thomas Reardon, a brother-in-law of defendant, testified that the decedent on more than one occasion stated in the presence of the witness that he had not only given to the defendant the automobile, but had also given to her the bonds in question. The same testimony in substance was given by Albert Cavagia, the chauffeur who operated the machine for Hale and wife after it was purchased.

Mrs. Maggie L. Rawlins testified that she resided in Bellevue near the decedent and that he would frequently stop in her place of business to rest and converse and that he on one occasion said that he had a lot of bonds, which he gave to his wife, and that he was going to get a safety box in which to put them, so that no one could take them from her until he died and was going to give the key to his wife and that he had given the bonds to her to do with as she pleased.

A. H. Cochenower, who was superintendent of the safe deposit and registration department of the Central Trust Company of Cincinnati, testified that he was acquainted with defendant and her husband and that they came to his office on March 6, 1918, and rented a safety box with the privilege of each of the parties having access to it, but that the only one who afterwards came and had actual access to it was Mrs. Hale, the defendant, whose visits were March 15, April 8 and April 12, 1918. There is no pretense nor intimation made in the case, either by pleading or proof of any undue influence exercised by defendant or on her behalf, nor of any mental incapacity upon the part of decedent. Neither is there any effort by any character of testimony to impeach any of the witnesses, whose testimony we have related, except the cir-

cumstance of the relationship of some of them to defendant. The only testimony in the case having a tendency to refute the gift, as testified to by defendant's witnesses, is that given by Edgar Stark, vice president of the Union Savings Bank and Trust Company, trustee under the will of Samuel J. Hale. He testified, and exhibited a receipt from the decedent to the effect that the settlement with the decedent in which he was paid his portion of his father's estate was made on March 14, 1918, at which time the bonds in question were delivered to him. The receipt given by decedent at the time, as copied in the record, bears that date and the commissioner, accepting that date as true and correct, naturally concluded that it was impossible for the decedent to have delivered the bonds to his wife on the 6th of March, eight days before the receipt shows they were delivered to him, and the circuit court appears to have taken the same view when he overruled defendant's exceptions and confirmed the report. If it was undeniably established that decedent did not receive the bonds until the 14th of March, that fact would greatly weaken defendant's cause but not necessarily defeat it, since it might be possible that she and her witnesses were mistaken as to the date of the gift. But we are not convinced by the testimony that the delivery of the bonds by the trustee, through the witness Stark, to the decedent occurred as late as March 14. The witness testified that he could not say from personal recollection that the date of decedent's receipt was the true date of the delivery of the bonds to him, but only that from the records of the trust company as well as the date of the receipt, he felt sure that the delivery was made as of the date of the receipt. The original receipt is not before us, it having been filed in the court in Cincinnati before which the trust company made its settlement, but it is admitted by the witness Stark that the original shows on its face that the date has been changed and altered. He attempts to account for this evident alteration by saying that he purposely dictated the receipt some days before in anticipation of the settlement and that the stenographer, who took the dictation and transcribed it, perhaps thoughtlessly, inserted that date. He furthermore says it was the custom of the court with which he settled to require receipts as of date of the settlement in order to show that the *cestui que trust* had been satisfied, and that such court frowned upon and discouraged such settlements before an order obtained for that

purpose, and for this reason witness is confident that he did not make the settlement with decedent and did not deliver to him the bonds in question until the 14th of March when the order of the court allowing the settlement was entered. But this reason urged by the' witness is, to say the least of it, largely weakened by the fact that nine days before the date of the receipt and on March 5, he, as the representative of his trust company, gave a check to the decedent for $2,959.33, which was deposited the next day (March 6) to the credit of decedent in the Central Trust Company of Cincinnati. This check was for the amount of the proceeds of the sale of other bonds held by the trustee (and which amount is included in the receipt of March 14), which sale was made at the instance and request of the decedent without an order of court to do so and the proceeds paid to him without such an order. Under these circumstances we think it just as reasonable to conclude that the entire settlement was made with decedent and the bonds delivered to him on March 5, when the $2,959.33 was paid to him, as that it was made on the 14th of March and that the latter date was afterwards inserted so as to conform to the date of the court orders permitting the settlement. At any rate we would feel reluctant to say that under the circumstances the single fact of the date of the receipt (shown to have been changed) was sufficient to overcome the positive and uncontradicted testimony introduced by defendant. The rule is that the chancellor's finding of fact will not be disturbed by this court if the only effect of the entire testimony is to raise a doubt in our minds as to the truth of the matter. But when such doubt is removed and the findings are against the preponderance of the evidence, it is not only our right, but our duty also, to adjudge the facts as warranted by the testimony. Following this rule we can not escape the conclusion that the chancellor was in error, since the evidence relied on to defeat the gift is to our minds insufficient for that purpose.

Wherefore the judgment is reversed with directions to dismiss the petition as against the defendant individually and to adjudge her the owner of the stock by gift from her husband and for other proceedings not inconsistent with this opinion.