## Mason's Guardian et al. v. Soaper et al.

(Decided January 24, 1930.)

JOHN C. WORSHAM for appellants.

HENSON & TAYLOR for appellees.

OPINION OF THE COURT BY JUDGE REES—Affirming.

This appeal involves the right of the devisees under the will of Richard H. Soaper to require the grantees under a deed executed by the testator during his lifetime to contribute ratably with the devisees under the will to the payment of the testator's debts.

Richard H. Soaper died testate on January 1, 1926. He had never been married and his estate was left to his brothers and sisters and their children. In 1909 he made a will by the thirteenth clause of which he devised 500 acres of land, known as the ''Anderson Farm,'' to his nephew and niece, William H. Soaper and the latter's wife, Lucy S. Soaper, for life, and upon the death of either to the survivor, and upon the death of the survivor to their son, Richard H. Soaper, Jr. On February 23, 1921, he executed a deed conveying to William H, Soaper and Lucy S. Soaper 552.93 acres of land known as the ''Home Farm.'' This land was conveyed to them for life, with remainder to their children. The deed was not recorded until after the grantor's death nearly five years later. The deed contains this clause: ''But this deed is in lieu and instead of any provision that I have made for my said nephew, William H. Soaper and his wife, my niece, Lucy S. Soaper, or either of them in my will bearing date of February 7, 1909.'' On February 24, 1921, the day after the deed was executed, he executed a codicil to his will, by the fifth clause of which he annulled the thirteenth clause in the original will in these words: ''5th. By the 13th clause of my said will I give and devise to William H. Soaper and his wife, my niece, Lucy S. Soaper, certain property therein described. I have since provided for my said nephew and niece by deed and

I therefore cancel and annul the said 13th clause of my said original will."

At the time the codicil and deed were executed, Richard H. Soaper owned an estate valued by him at more than $500,000. He was out of debt, and had a considerable sum in cash. At the time of his death he was heavily in debt, and in order to pay the estate's indebtedness it will be necessary to abate each of the testator's specific legacies and devises.

The executor filed suit for the settlement of its decedent's estate and alleged that it would be necessary to sell a portion of the real and personal property devised and bequeathed to pay its decedent's debts. All of the testator's devisees and legatees and William H. Soaper and his children, grantees under the deed, were made parties. Lucy S. Soaper had died prior to the death of the testator. The appellants, who were testator's devisees and legatees, made their answer to the petition a cross-action against William H. Soaper and his children, and asked that the property conveyed to them by the deed be adjudged ratably liable with the decedent's property disposed of by will for the payment of his debts. The lower court adjudged that the property conveyed to William H. Soaper and Lucy S. Soaper and their children was not liable for any contribution to the payment of decedent's debts, and the legatees and devisees under the will have appealed.

No direct attack is made on the validity of the deed, but appellants insist that since the deed was voluntary and on the same plane with the testamentary gifts, the property conveyed should contribute ratably with the property bequeathed and devised to the payment of decedent's debts. Appellants contend that the testator intended the deed, so far as the grantees were concerned, to take the place of his will in making testamentary provision for them; that it was of a testamentary nature, was not unconditionally delivered, and was intended to take effect only after his death.

If this contention is sound, then the deed is void, as the formalities required for the execution of a will were not followed. Rawlings v. McRoberts, 95 Ky. 346, 25 S. W. 601, 15 Ky. Law Rep. 771; Ison v. Halcomb, 136 Ky. 523, 124 S. W. 813. Cf. Parker v Archibald, 212 Ky. 567, 279 S. W. 979; Siter v. Hall, 220 Ky. 43, 294 S. W. 767.

Whether or not an instrument is testamentary in character depends upon the intention of the maker. The general rule almost universally followed is that, when a deed is delivered to a third person or depositary with the direction to the latter to hold the deed during the lifetime of the grantor, and upon the latter's death to deliver it to the grantee, and the grantor intended at the time of the delivery to the third person or depositary to part forever with all right to recall or control the deed, such delivery is effectual and valid and passes a present interest in the property, though the enjoyment of it be postponed. Colyer v. Hyden, 94 Ky. 180, 21 S. W. 868, 15 Ky. Law Rep. 101; Haydon v. Easter, 24 S. W. 626, 15 Ky. Law Rep. 597; Nuckols v. Stone, 120 Ky. 631, 87 S. W. 799, 27 Ky. Law Rep. 1043; Kirby v. Hulett, 174 Ky. 257, 192 S. W. 63; Loomis v. Loomis, 178 Mich. 221, 144 N. W. 552; Horn v. Horn (Neb.) 224 N. W. 857; Kolber v. Steinhafel, 190 Wis. 468, 209 N. W. 595; 26 Harvard Law Review, 565; Snodgrass v Snodgrass, 107 Okl. 140, 231 P. 237, 52 A. L. R. 1213. See annotation to last-cited case in 52 A. L. R. 1222.

A correct statement of the law will be found in 18 C. J. 208, where it is said: "The delivery of a deed by the grantor to a third person to be held by him and delivered to the grantee upon the grantor's death will operate as a valid delivery, where there is no reservation on the part of the latter of any control over the instrument, and under such circumstances it is usually held that the deed takes effect from the first delivery."

In Standiford v. Standiford, 97 Mo. 231, 10 S. W. 836, 3 L. R. A. 299, a deed from a father to his minor child was handed to a third party, who was directed to file it for record. When it was suggested that it might not be prudent to do this, the grantor said: "Take the deed and keep it safely." The custodian kept the deed, and had it recorded after the grantor's death. It was held that it was an absolute delivery for the benefit of the grantee, and that it took effect from the date of such delivery. In Thompson on Real Property, vol. 4, p. 946, the author says:

"Whether an instrument is a deed or a will is determined by the inquiry whether it is to take effect immediately as a present conveyance, or only upon the death of the maker. If the instrument conveys a

present interest it is irrevocable, and operates as a conveyance, although the grantor retains a life interest and the possession of the land. It is even held that a deed containing a provision that the title is to remain in the grantor during the lifetime, or that it is not to go into effect until his death, is a present conveyance with a reservation of a life estate. If the grantor intended to make a present conveyance, and there was a sufficient delivery of it, the instrument is a deed, though possession of the land conveyed is not to vest in the grantee till the grantor's death."

And on page 949 of the same work he says:

"A deed may be delivered to take effect upon the grantor's death. If a grantor delivers a deed to a third person absolutely as his deed, without reservation and without intending to reserve any control over the instrument, though this is not to be delivered to the grantee till the death of the grantor, the deed when delivered upon the grantor's death is valid, and takes effect from the first delivery. The deed in such case passes a present interest to be enjoyed in the future."

In the instant case the grantor gave no directions that the deed should not be recorded until after his death. The facts surrounding its execution and delivery, in brief, are as follows: Mr. Malcolm Yeaman, an attorney, drew the deed in question, and he testified that, after the deed had been executed, the grantor remarked: "Well, they will kick up a dust and raise a rumpus and want me to convey them something," referring to other members of his family. The witness suggested that the grantor might give the deed to his nephew William H. Soaper and not have it recorded immediately. The grantor said, "All right, give it to him." The deed was prepared, signed, and acknowledged at the grantor's home. William H. Soaper was at his uncle's home at the time, but was not present when the above conversation took place. Mr. Yeaman handed the deed to William H. Soaper in the presence of James Yeaman and Charles E. Davis, and repeated the conversation that had taken place between him and Richard H. Soaper. William H. Soaper read the deed, handed it to James Yeaman, and told him to take it and put it away. James Yeaman, who was a

lawyer, put the deed in a safe in his office and kept it until after the death of Richard H. Soaper, when it was delivered to the grantee and recorded. On two occasions, however, during the lifetime of the grantor, the grantee called for the deed, and it was delivered to him. On one occasion he took it to his home, kept it a day or two, and then returned it to Mr. Yeaman. The grantor never inquired about it while it was at Mr. Yeaman's office, and no witness who was present testified that he said anything at the time the deed was executed and handed to Mr. Yeaman that would indicate he expected to retain any control of, or dominion over, the instrument, nor did he expressly request that the recording of the deed be delayed until after his death. As said by the chancellor in a written opinion:

"There is no conflict in the testimony as to what happened at the time of the execution and delivery of the deed. From the testimony it is certain that the draftsman of the deed, and the man to whom it was handed for delivery to the grantee, was not advised of any limitation or restriction whatever, but was directed to deliver the deed to the grantee, W. H. Soaper, unconditionally and without any sort of limitation or restraint. There is no disagreement in the evidence that the deed was delivered to W. H. Soaper, who, after reading it, handed it to Mr. James Yeaman, with the request that he keep it for him, and Mr. Yeaman testifies, which is not contradicted, that he did keep it for delivery to W. H. Soaper and would not have delivered it to any other person."

Considerable evidence was introduced by the appellants which tended to show that the grantor, during his lifetime, retained control of the land conveyed, but all of the acts and statements attributed to him are consistent with his expressed wish to keep the knowledge of the transfer from his other relatives, and also with an understanding that he was to use the property during his lifetime. In either event they could not affect grantees' title if the deed had been delivered. Appellants concede that a deed not recorded until after the grantor's death will pass title to the grantee as of the date of the deed, if properly executed and delivered, but they insist that there is an exception to that rule where the conveyance

is a voluntary one and is intended as a gift of the property in the nature of a testamentary disposition and part of decedent's estate must be sold to pay his debts. They contend that under such a state of facts the property conveyed by such a deed is required to contribute ratably to the payment of decedent's debts with property given by will, and they rely upon Polley's Executor v. Polley, 82 Ky. 64, 5 Ky. Law Rep. 801. As we read that case, however, it is not authority for the claimed exception to the general rule.

In the Polley case, the grantor conveyed a tract of land to the children of two deceased sons. The remainder of his estate was left to his other heirs by will. At the time the deed was executed and delivered, there was a mortgage on the land. In a suit to settle the testator's estate, the mortgagee sought to enforce the mortgage against the land conveyed to the children of testator's two deceased sons. The grantees resisted the suit, and claimed that under the clause of general warranty in the deed the estate devised to the other heirs should be subjected to the debt. The lower court adjudged that the devisees under the will should remove the mortgage debt, but this court reversed the judgment and held that the grantees took the land subject to the mortgage upon it and should contribute ratably with the devisees in paying the mortgage debt. In the course of the opinion it was said:

> "It is true these appellees take under the deeds, and not under the will, and the creditors of the testator would ordinarily be compelled, or rather his executor and devisees, to exhaust the estate left by the testator before subjecting the land conveyed to their children. . . . If the testator had, in his lifetime, conveyed this land without having executed a prior incumbrance upon it, it would, no doubt, be adjudged that his estate left at his death, if sufficient, must pay his debts, and not what he had previously conveyed to his children; but a different question is presented in this case."

And, in the response to a petition for a rehearing, the court said:

> "The object of the grantor and donor was to give to each of his children certain portions of his

estate. Some he gave by will and the others by deed, and no valuable consideration passing from either. Those holding under the deeds are in a court of equity asking that those holding under the will shall relieve their land of this incumbrance, upon the idea that the advancement was made in the lifetime of the testator, and that they can not be required to bring what they received into hotchpot in order to an equal division. This is the correct rule if they were satisfied with what they had received. They received the land with the incumbrance upon it, and now come into a court of equity and ask that the other donees or devisors be compelled to dispose of what was given them and with the proceeds remove the incumbrance upon that portion of the estate advanced to their parents and conveyed to them. This is not equity, and it is just and proper that they should contribute.''

Thus it will be seen that the opinion in the Polley case merely holds that the grantees under the deed in a suit upon the warranty must contribute ratably with the devisees under the will to the payment of the mortgage debt created before the deed was made. It was stated in the opinion that the general debts of the testator must be paid by the devisees. That is this case.

We conclude that the chancellor correctly adjudged that the deed in question was delivered during the lifetime of Richard H. Soaper and conveyed a present interest to the grantees, and that the devisees under the will cannot require the appellees to contribute to the payment of the general debts of the testator.

Judgment affirmed.