Louise HOWELL, Appellant,

v.

Darrell A. HERALD, Executor
of the Estate of John R.
Turner, Appellee.

No. 2003–SC–000476–DG.

Supreme Court of Kentucky.

Feb. 23, 2006.

As Modified Feb. 24, 2006.

As Modified on Denial of Rehearing
Aug. 24, 2006.

Kif Harward Skidmore, David T. Royse, Stoll, Keenon & Park, LLP, Lexington, Richard E. Fitzpatrick, Fitzpatrick, Osborne, Heaberlin, and Osborne, Prestonsburg, Robert F. Houlihan, Jr., Savage, Elliott, Houlihan, Moore, Mullins & Erdmann, LLP, Lexington, Counsel for Appellant.

Richard C. Ward, Debra H. Dawahare, Mickey T. Webster, Karen J. Greenwell, La Toi Lampkin Mayo, Wyatt, Tarrant & Combs, LLP, Lexington, Counsel for Appellee.

LAMBERT, Chief Justice.

This cause comes before the Court for review of the opinion of the Court of Appeals wherein it adopted, verbatim, the Opinion and Judgment of the Trial Court granting summary judgment to Appellee. We granted discretionary review, oral argument was heard, and for the reasons herein stated, reverse the decision of the Court of Appeals.

John Raymond Turner died in 1998, leaving most of his estate, valued at approximately fifteen million dollars ($15,000,000), to a foundation created in his will. The estate consisted of, among other things, real property in several Kentucky counties and in Florida. In 1996, Turner contemplated transferring some of his real property to his niece, Appellant, Louise Howell (Howell). Turner spoke with George Fletcher (Fletcher), his attorney, about executing deeds and putting them in a lockbox, so that Howell would not know about the deeds until after Turner's death. However, Turner did not authorize preparation of the deeds because he was advised that executing the deeds would be a taxable transfer of ownership and he did not want to pay gift tax. Additionally, Turner wanted to retain control over the property

as long as he lived. Attorney Fletcher suggested that a way around this would be to either add a codicil to Turner's will, or to prepare and execute deeds to the property by means of a power of attorney, waiting until close to Turner's death for the actual execution. Turner opted to use the power of attorney means and decided to wait until he was closer to death to proceed with gifting the property to Howell.

Approximately two years later Turner was diagnosed with terminal cancer. On March 4, 1998, while in the hospital and literally on his deathbed, Turner received a visit from Fletcher. Fletcher brought the power of attorney for Turner to sign, which he did, making Fletcher his attorney-in-fact. At that time Turner requested that Fletcher prepare deeds to Howell for certain properties. On March 6, 1998, Fletcher, as Turner's attorney-in-fact, prepared and executed the deeds. By their terms, the deeds conveyed the property to Howell, but retained a life estate in Turner. Fletcher retained possession of the deeds. Turner died two days later on March 8, 1998. After Turner's death, Fletcher contacted Howell so that she could arrange to sign the certificates of consideration on the deeds, thereby making them suitable for recordation. Until contacted by Fletcher after Turner's death, Howell did not have any knowledge of the existence of the deeds.

The executor of Turner's estate [1] offered to purchase some of the property allegedly gifted to Howell. After the offer was rejected, the executor brought suit claiming that the transfers had been procured by fraud. After two years of litigation that suit was settled. Six months later, the executor filed the current suit claiming that the transfer was legally insufficient because Turner did not deliver the deeds to Howell while he was alive. As such, the executor contends that the property should have been included in Turner's estate upon his death. The circuit court held for the executor based upon a failure of delivery of the deeds, and the Court of Appeals affirmed, adopting the circuit court's opinion as its own.

 As the purported gift of real property to Howell was inter vivos, Turner's will having contrary provisions, we will first address the requirements of a valid gift, for unless the elements are satisfied, there is no need to consider any other elements that may be peculiar to real property. An inter vivos gift is a "voluntary transfer of property by one living person to another living person, without any valuable consideration, which is perfected and becomes absolute during the lifetime of the parties." [2] In *Gernert v. Liberty Nat. Bank & Trust Co. of Louisville* [3] we enunciated the elements of a valid inter vivos gift as follows: "(a) [t]hat there must be a competent donor; (b) an intention on his part to make the gift; (c) a donee capable to take it; (d) the gift must be complete, with nothing left undone; (e) the property must be delivered and go into effect at once, and (f) the gift must be irrevocable." [4] If any of the elements of the gift are absent or incomplete, then the gift will fail. Furthermore, "since gifts of this character [intervivos] [sic] furnish a ready means for the perpetration of fraud, the evidence necessary to establish all of the essentials to complete them must be

---

**1.** Dale Bryant died and was replaced by the current Appellee, Darrell Herald, as executor of Turner's estate.

**2.** 38 Am.Jur.2d Gifts § 7 (2005).

**3.** 284 Ky. 575, 145 S.W.2d 522 (Ky.1940).

**4.** *Id.* at 525.

clear and convincing."[5] The elements necessary for a valid inter vivos gift apply equally to gifts of personal property and real property.[6]

In the case at bar, elements (a), (b), and (c) have been fulfilled. There was deposition testimony by Turner's secretary of more than 20 years that Turner was of sound mind when he executed the power of attorney. Additionally, Fletcher attested to Turner's mental well being during the execution of the power of attorney, and there was no evidence that he was not competent. Howell was a natural object of Turner's affection, and there was ample evidence to establish that it was his wish to provide these gifts to her. Furthermore, Howell was alive and well, and fully capable of taking the gifts. With respect to element (b), the donor's intention, it is apparent from the record that Turner cared deeply for his niece, and the testimony of several witnesses buttressed this fact. Furthermore, the uncontroverted facts show that Turner sought counsel to facilitate making his wish of gifting this property to Howell a reality. The process may have been beset with legal complications, but we have no difficulty concluding that Turner's intention was clear.

Now we turn to the more difficult and interesting issue in this appeal. Throughout this litigation the effectiveness of the delivery of the gift has been contested vociferously by the parties. In another context, it might be necessary to separately analyze the *Gernert* elements supra, (d),

(e), and (f), but under the facts presented here, completeness, delivery, and irrevocability are so interwoven that separate treatment of each would be repetitive. As such, whether there was the required delivery will be treated as exemplary of the three contested elements and dispositive of the case.

For a gift to be delivered, it must be shown that the owner parted with dominion and control over the gift.[7] Delivery is defined in *Black's Law Dictionary* [8] as "the formal act of transferring or conveying something, such as a deed; the giving or yielding possession or control of something to another." While actual delivery of the gift is preferred, constructive or symbolic delivery may be adequate depending on the facts of the case.[9] The distinction between symbolic and constructive delivery is occasionally misunderstood. A clear explanation is as follows:

A delivery is symbolic, when instead of the thing itself, some other object is handed over in its name and stead. A delivery is constructive, when in place of actual manual transfer the donor delivers to the donee the means of obtaining possession and control of the subject matter, or in some other manner relinquishes to the donee power and dominion over it.[10]

Our case law has long recognized constructive delivery as a means of gift-

5. *Hays' Adm'rs v. Patrick*, 266 Ky. 713, 99 S.W.2d 805, 809 (Ky.1936) (quoting *Hale v. Hale*, 189 Ky. 171, 224 S.W. 1078, 1079 (Ky. 1920)).

6. *See Leasor v. Bailey*, 714 S.W.2d 156 (Ky. App.1986).

7. Caryl A. Yzenbaard, *Kentucky Intestacy, Wills and Probate* § 6:11 (2004).

8. 440 (7th ed.1999).

9. Yzenbaard, *supra*, at § 6:11 (citing *Bryant's Adm'r v. Bryant*, 269 S.W.2d 219 (Ky.1954)).

10. 2 *Thompson on Real Property* § 13.04(a)(2)(i) (2d Thomas ed., David A. Thomas ed.2000) (citing Ray Andrews Brown, *The Law of Personal Property* 92 (3d ed., Walter B. Raushenbush ed.1975)).

ing.[11] In *Kirby v. Hulette*[12] we recognized that, "it is not essential that there must be an actual manual delivery of the deed to the grantee."[13] The case at bar deals with constructive delivery (no actual physical delivery to Howell), and symbolic delivery (using a deed as the means of conveyance). This opinion will focus on the lack of actual physical delivery, and whether the facts of this case permit a finding of constructive delivery.

The deed itself has not been questioned, nor has the procedure of using a deed to gift real property been called into doubt. Symbolic delivery therefore does not warrant a discussion, as it is uncontested that a deed is a proper means of conveying real property.

 Howell asserts that the intention of the grantor to presently transfer ownership is the controlling factor in determining whether constructive delivery has occurred. To this end, she cites several Kentucky cases dealing with the inter vivos delivery of gifts. We agree with Appellant that when a gift is constructively delivered, the intent of the grantor to part with dominion and control is the ultimate factor in determining whether the gift was complete. This position is well articulated in the following quotation from Tiffany on real property.

> Accordingly, it is generally agreed that delivery does not necessarily involve any manual transfer of the instrument, and provided an intention is indicated that the deed shall take effect, the fact that

the grantor retains possession of the instrument is immaterial.

> . . . .

Generally speaking, then, it may be said that a valid delivery of a deed requires that either the grantor part with control over the instrument, the right to recall it or alter any of its provisions, or, if the grantor retains the instrument in his possession, that he by word or deed disclose an **unmistakable intention to pass presently the interest** which the deed purports to convey and thus deprive himself of control over that deed.[14]

This position, which has been characterized as the "modern view"[15], is a moderation of the rigid dogma of gift law, and is an example of how some present day courts have become more willing to recognize a gift, where formerly courts would not. The above quoted passage is not unappealing, as it is sufficiently flexible to give effect to grantors' intentions where their acts may have been atypical. Such an approach is not unprecedented in Kentucky.[16]

The vast majority of Kentucky cases on gifting were decided many years ago. While the state of the law has evolved throughout the years, three Kentucky cases are both illustrative as well as controlling of the case at bar. In *Noffsinger v. Noffsinger*[17] W.H. Noffsinger asked the court to set aside an instrument designated as "A Deed of Conveyance", as not having been delivered to the grantee, his son. The executed deed was kept in a

---

11. *See Payne v. Powell*, 68 Ky. (5 Bush) 248 (1869).

12. 174 Ky. 257, 192 S.W. 63 (Ky.1917).

13. *Id.* at 68.

14. 4 Herbert Thorndike Tiffany, *The Law of Real Property* § 1034 (2005) (emphasis added).

15. *Id.*

16. *See Noffsinger v. Noffsinger*, 303 Ky. 344, 197 S.W.2d 785 (Ky.1946).

17. *Id.*

common depository with other important papers, and was accessible to the family. This Court held that it was "the intention of the grantor to vest in his son a present interest in the land and to retain only a life estate", and that delivery had in fact occurred. Instructive for the instant case, the Court said:

It is an elementary principle that a deed must be delivered in order to become operative as a transfer of the ownership of the land, but manual delivery by the grantor to the grantee is not essential. It may be delivered to a third person with intention that the grantee shall have the benefit of the deed or it may be retained by the grantor and delivery be consummated if the grantor expresses an intention that the title shall pass and indicates by acts or words that he is holding the instrument for the benefit of the grantee. The controlling factor is the intention to make delivery, and this intention may be inferred from the grantor's acts and words and from the circumstances surrounding the execution of the instrument.[18]

Noffsinger has been characterized as a "common depository" case, and Appellee contends that it is inapposite to the circumstances of this case. We disagree. The common depository facet of Noffsinger is not what makes the case relevant here, but rather this Court's conclusion that delivery could be sustained without a manual delivery from the grantor to the grantee.

In *Sullenger v. Baker*[19] the Court upheld delivery where the grantor gave deeds (in favor of his two nieces) to his good friend, the Postmaster, with instructions for the friend to hold the deeds until the grantor's death. The grantor wanted to retain control over the land as long as he lived, and upon his death the friend was to record the deeds and put them in the hands of the nieces. The grantor told him that if he were to die before the grantor, the grantor wanted the friend's wife to return the deeds to the grantor. The only people who knew of the existence of the deeds were the friend, his wife, and the grantor. The Appellee in *Sullenger* asked the Court to set aside the deeds based on a lack of a valid delivery. Also, the Appellee argued that because the grantor directed the friend to have his wife return the deeds if the friend were to die first, the grantor had retained the power to revoke the deeds. In rejecting the Appellee's argument, the Court held:

The general rule almost universally followed is that, when a deed is delivered to a third person or depository with the direction to the latter to hold the deed during the lifetime of the grantor, and upon the latter's death to deliver it to the grantee, and the grantor intended at the time of the delivery to the third person or depository to part forever with all right to recall or control the deed, such delivery is effectual and valid and passes a present interest in the property, though the enjoyment of it be postponed.[20]

. . . .

While the requirement that in order to be effectual, a delivery to a third person of a deed to be subsequently delivered to the grantee must be under such circumstances as to deprive the grantor of the right to recall, except for a violation by the grantee of a condition, has been frequently stated in unqualified terms, it

---

**18.** *Id.* at 786–87 (citations omitted).

**19.** 296 Ky. 240, 176 S.W.2d 382 (Ky.1943).

**20.** *Id.* at 383 quoting *Mason's Guardian et al. v. Soaper,* 232 Ky. 525, 23 S.W.2d 956, 957 (Ky.1930).

seems to us that the controlling factor to be considered in its application is the intention of the grantor, and that the fact that he might have been able to regain the physical possession of the instrument should not affect the validity of the delivery if his intention at the time was that the delivery should be irrevocable so far as the right of the grantee to receive the title to the property, and eventually its enjoyment, was concerned.[21]

Finally, in *Moore v. Moore*[22] the grantor (J.M. Moore) requested Price, a deputy county clerk and vice president of a local bank, to prepare deeds to the grantor's son and granddaughters. The grantor signed and acknowledged the deeds, and instructed Price to leave them at the bank and to deliver the deeds subsequent to the grantor's death. At the time of the grantor's death, Price had already died. The deeds were found in unsealed envelopes on a shelf in the bank vault, with the words "J.M. Moore, deeds" written across the envelopes. In upholding delivery, the Court said:

> The rule is well settled that a deed delivered to [a] third person with directions to hold it during grantor's lifetime and then deliver it to the grantee, is a valid delivery where there is no reservation on the part of the grantor of any control over the instrument.... A deed may be delivered to take effect upon the grantor's death. If a grantor delivers a deed to a third person absolutely as his deed, without reservation and without intending to reserve any control over the instrument, though this is not to be delivered to the grantee till the death of the grantor, the deed when

delivered upon the grantor's death is valid, and takes effect from the first delivery. The deed in such case passes a present interest to be enjoyed in the future.[23]

■ These cases, coupled with many others, show a clear and persistent pattern of this Court to balance the historical rigidity of delivery in gift law against the more practical realization that in certain cases intent should control. We are under no illusion that Kentucky case law is without conflict and that persuasive arguments can be made on the other side of this debate. Furthermore, we recognize that "intention alone will not constitute delivery."[24]

As the foregoing cases demonstrate, Kentucky law has not at all times been consistent on what acts or conduct amount to delivery. Perhaps this is so because the factual circumstances that arise vary so greatly. We are persuaded by the facts of this case that delivery occurred. At the time of execution, the grantor was bedfast and *in extremis*. He summoned his lawyer and gave directions as to the preparation and execution of instruments of conveyance and retained unto himself a life estate. Under the circumstances, it is difficult to identify what more the grantor could have done to accomplish the inter vivos transfer of the property. While flawed acts of an agent are normally attributable to the principal, to the extent Fletcher's acts may have been flawed by failure to make immediate physical delivery of the instruments, Turner's demonstrated intent and his overt acts were sufficient to satisfy the gifting requirements.

**21.** *Id.* at 384.

**22.** 239 S.W.2d 987 (Ky.1951).

**23.** *Id.* at 988 (citations omitted).

**24.** *Hardin v. Kazee*, 238 Ky. 526, 38 S.W.2d 438, 439 (Ky.1931) (quoting *Justice v. Peters*, 168 Ky. 583, 182 S.W. 611, 613 (Ky.1916)).

It is not insignificant that Turner retained a life estate. In *Nuckols v. Stone* [25] this Court said "the fact the grantor reserves a life estate to himself is given effect as illustrating his intent that the deed should be operative as a present transfer of title." [26] The reservation of a life estate in a deed signifies that the grantor believes he has parted with the land conveyed. It is an acknowledgement that the remainder interest has been disposed of, for otherwise the retention of a life estate would be unnecessary.

There can be no doubt that Fletcher had a fiduciary relationship with Turner. A central aspect of that relationship was the duty Turner imposed upon Fletcher to accomplish Turner's purpose in transferring ownership of the property to Howell. Fletcher was without discretion to refrain or refuse to discharge the duty imposed upon him. Thus, Turner's directions, accompanied by Fletcher's duty of performance, effected delivery of the instruments.

Turner was bedfast and could not do for himself. Therefore he hired an attorney, insured that the attorney had the authority to execute an instrument on his behalf via a power of attorney, gave directions as to what the attorney-in-fact must do, and by virtue of the relationship created, deprived the attorney-in-fact of authority to do otherwise. The delay, while certainly not excessive, in discharging the duty of notification and physical delivery did not change the circumstances of the task imposed upon Fletcher by Turner. An unequivocal order to a fiduciary to make delivery is delivery.

For the reasons stated herein, we reverse the Court of Appeals, and remand to the trial court to enter judgment consistent with this opinion.

COOPER, GRAVES, JOHNSTONE, ROACH, SCOTT, and WINTERSHEIMER, JJ., concur.

**25.** 120 Ky. 631, 87 S.W. 799 (Ky.1905).

**26.** *Id.* at 802.