RENDERED: OCTOBER 11, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1404-MR

JACK DAY                                                                        APPELLANT


                        APPEAL FROM MADISON CIRCUIT COURT
v.                      HONORABLE KRISTIN CLOUSE, JUDGE
                        ACTION NO. 19-CI-00288


JENNIFER BISHOP AND
LOREN BISHOP                                                                    APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, ECKERLE, AND GOODWINE, JUDGES.

CETRULO, JUDGE: Appellant Jack Day ("Jack") appeals three Madison Circuit

Court orders – a partial summary judgment, partial directed verdict, and judgment

after a bench trial – that collectively dismissed his claims in a property rights

action. After review, we affirm.

# BACKGROUND

In 1982, Jack bought 591 Lost Fork Road in Richmond, Kentucky ("Property"). The Property is composed of "the house" with separate upstairs and downstairs living spaces, a double-wide trailer, and a standalone apartment. Jack lived upstairs in the house and for approximately three-and-a-half years. Jack's daughter, appellee Jennifer Bishop ("Jennifer"), and her husband, appellee Loren[1] Bishop (collectively, the "Bishops"), lived in the downstairs unit.

In August 2015, Jack signed a deed conveying title of the Property in fee simple absolute to the Bishops "in consideration of the love and affection" and retained a life estate for himself ("Deed"). The next month, in September 2015, Jack and the Bishops refinanced the Property. Jack and the Bishops both signed the new mortgage paying off Jack's existing $45,900 mortgage, and the Bishops alone signed an additional "promissory note" for home improvement funds. The Bishops then began paying the Property's mortgage, paying on their promissory note, and purchased homeowners' insurance on the Property. Sometime in 2018, Jack and the Bishops' relationship fractured, and the Bishops moved out. Thereafter, the Bishops stopped making payments on the Property's mortgage and

---

[1] At times in the appellate record "Loren" appears as "Lorren," but for consistency, we shall utilize the spelling as it appeared before the circuit court and within Loren's appellee brief.

canceled their homeowners' insurance policy. Jack again assumed all the debt for the Property.

In May 2019, Jack filed a breach of contract claim in Madison Circuit Court demanding the Bishops execute a quitclaim deed to return title of the Property to him. Jack asserted that he agreed to transfer title of the Property in exchange for the Bishops paying the mortgage, insurance, and taxes on the Property. Conversely, the Bishops asserted that they agreed to pay the mortgage in lieu of rent while they lived on the Property, but that the Deed was an unconditional gift. Litigation continued through the next four years.

In August 2023, the circuit court (a) *granted* partial summary judgment in favor of the Bishops because Kentucky Revised Statute ("KRS") 371.010, the statute of frauds, barred Jack's breach of contract claim on the oral agreement, but (b) *denied* the remainder of the Bishops' claims. The parties proceeded to trial on the remaining claims, and in September 2023, the Madison Circuit Court held a one-day bench trial.

At trial, Jack testified that Jennifer approached him about having the Property deeded over to her for tax benefit purposes. He stated that he agreed, deeded her the Property in exchange for her assuming the mortgage, insurance, and property taxes, but never intended the Deed to be an unrestricted, unconditional gift. He testified that he agreed, in part, to the conveyance because he wanted to

-3-

retire to Florida and the Bishops' assuming the Property's payments would allow him to do that. Jack stated, "she would have gotten the property anyway."

Next, an employee of the mortgage lender ("Banker") testified. The Banker testified that she knew the parties and managed the 2015 refinancing. She stated that the promissory note belonged exclusively to the Bishops and that the Bishops paid the mortgage payments from approximately 2015 to 2018; in July 2018, Jack resumed the mortgage payments. She also stated that at the time Jack resumed mortgage payments, the mortgage was almost at the amount that he owed prior to the 2015 refinancing.

After testimony of Jack and the Banker, both parties moved for a directed verdict, Jack first. The circuit court denied Jack's motion and granted the Bishops' motion in part. The court found that the Deed was complete and unambiguous, and Jack did not meet his burden of establishing the Deed was conditioned upon the Bishops paying the Property's debt in full. The circuit court allowed Jack's unjust enrichment claim to proceed, but only as to those alleged debts, expenses, and enrichments incurred by the parties post-deed, not the possessory interests addressed within the Deed.

Next, the trial resumed, and Jennifer testified. She stated that she orally agreed to pay the Property's mortgage in lieu of rent while she lived at the Property. She stated that she and Jack made no firm agreement as to who would

pay the taxes and insurance on the Property. She stated that she and Loren spent more than $25,000 on property improvements while they lived there and have not sought return on those costs from Jack. Jennifer stated that after an argument over a ceiling light, Jack told her and her family to leave the Property and that he would shoot them if they returned.

After Jennifer's testimony, the circuit court found in favor of the Bishops and dismissed Jack's final claim of unjust enrichment because Jack did not meet his burden. The partial directed verdict and bench trial judgment are reflected in two separate orders entered on September 28, 2023. In October 2023, pursuant to Kentucky Rule of Civil Procedure ("CR") 59.05, Jack moved to alter, amend, or vacate the partial summary judgment, partial directed verdict, and the judgment of the bench trial. In November 2023, the circuit court denied the motion in full. Jack appealed.[2]

## STANDARD OF REVIEW

The circuit court may grant a motion for summary judgment if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The court must view

---

[2] As orders denying CR 59.05 motions are interlocutory and non-appealable, Jack appeals the underlying orders, *i.e.*, the partial summary judgment, partial directed verdict, and the judgment of the bench trial. *See Ford v. Ford*, 578 S.W.3d 356, 365 (Ky. App. 2019) (internal quotation marks and citation omitted).

the record "in a light most favorable" to the non-moving party. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citation omitted). Whether summary judgment should be granted is a question of law we review *de novo*. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010). Similarly, questions of statutory interpretation are questions of law we review *de novo*. *Seeger v. Lanham*, 542 S.W.3d 286, 290 (Ky. 2018) (citation omitted).

Within the September 28, 2023 Orders, we review findings of fact for clear error and give due regard to the opportunity of the circuit court to judge the credibility of the witnesses. CR 52.01. Findings of fact are clearly erroneous if not supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citation omitted). However, the circuit court's conclusions of law – including ambiguity in a contract and interpretation of a deed – are subject to *de novo* appellate review. *Gosney v. Glenn*, 163 S.W.3d 894, 898-99 (Ky. App. 2005) (citation omitted); *Big Sandy Co., L.P. v. EQT Gathering, LLC*, 545 S.W.3d 842, 844 (Ky. 2018) (citation omitted); *Morganfield National Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992).

## ANALYSIS

First, Jack argues the Bishops breached their oral agreement and that the written Deed does not include all the terms of the parties' agreement. The Deed explicitly stated that Jack conveyed the Property in fee simple absolute to the

Bishops in consideration of only love and affection with a life estate for himself. Jack asserts that "love and affection" was *not* the only consideration, and that the parties orally agreed, prior to signing the Deed, that Jennifer would assume the Property's entire remaining mortgage, taxes, and insurance in exchange for the Deed conveyance. The *oral* agreement and *written* Deed require disparate analyses.

Jack argues the statute of frauds does not bar enforcement of the oral agreement because he completely performed his end of the agreement by executing the Deed within one year, citing the exception discussed in *Sawyer v. Mills*, 295 S.W.3d 79, 84 (Ky. 2009). He argues that Jennifer promised to assume all the Property's debt in exchange for him transferring title of the Property, an obligation he performed approximately one month after the agreement. Conversely, the Bishops argue that no such agreement ever existed; but for argument's sake, if it did occur, such an oral agreement would not be enforceable because Jack did *not* perform within one year. They argue that implicit in his version of the alleged oral contract is Jack's obligation to allow the Bishops to remain on the Property, which he did not. Jack refutes this and asserts that as the Bishops were living on the Property for several years prior to the alleged oral agreement – "living arrangements were not apart [*sic*] of the Agreement terms." Yet, even accepting

Jack's version of the oral agreement, his facts do not fit within the exception he cites in *Sawyer*, *supra*.

*Sawyer* does recite an exception to the application of the statute of frauds: "if a contract may be performed within a year from [making it], the inhibition of the [statute of frauds] does not apply, although its performance may have extended over a greater period of time." *Id*. at 84 (internal quotation marks and citation omitted). To determine if the contract "fall[s] within the rule or the exception[,]" the court should consider the intentions of the parties. *Id*. "[W]here it is obvious from all surrounding facts and circumstances that it was not within the contemplation of the parties or within reason that it would be performed within a year[,] the statute applies." *Id*. (quoting *Lively v. Elkhorn Coal Co*., 101 F.Supp. 1014, 1016-17 (E.D. Ky. 1952)). Yet, Jack's own testimony negates this argument.

During depositions, legal counsel for the Bishops asked Jack, "Is it a correct statement that this [oral] agreement would have taken more than a year to accomplish?" Jack responded, "Yeah, I would say so, yes." Bishop's counsel asked, "It would have taken several years?" Jack replied, "It's took me several years to put it together." Applying *Sawyer*, our goal is to determine if the parties contemplated that the contract at issue would be performed within one year, and according to Jack's own words, he did not intend the oral contract to be performed

within one year.  Jack's deposition testimony overtly stated as much *and* implied an ongoing obligation for his performance as part of the oral agreement; but, even looking beyond *Sawyer*, this alleged oral agreement is the kind of unclear, unsubstantiated, oral agreement relating to the transfer of real property that the statute of frauds protects against.  "[T]he object of the [statute of frauds] is to prevent the evil arising from parol testimony in so far as certain subjects [are] concerned, particularly that of land."  *Gray v. Stewart*, 658 S.W.3d 1, 8 (Ky. 2022) (internal quotation marks and citations omitted).  KRS 371.010(6)[3] bars an action on a contract for the sale of real estate if it is not in writing and signed by the party to be charged.  *Stewart*, 658 S.W.3d at 8.  Here, the statute of frauds prevents enforcement of the alleged oral agreement.  KRS 371.010(6); *see also Smith v. Williams*, 396 S.W.3d 296, 299-300 (Ky. 2012).  Likewise, beyond the statute of frauds, the merger doctrine also prevents enforcement of the alleged oral agreement.

"The merger doctrine holds that all prior statements and agreements, both written and oral, are merged into the deed and the parties are bound by that instrument."  *Yeager v. McLellan*, 177 S.W.3d 807, 809 (Ky. 2005) (quoting *Borden v. Litchford*, 619 S.W.2d 715, 717 (Ky. App. 1981)).  "Under the merger

---

[3] "No action shall be brought to charge any person . . . (6) [u]pon any contract for the sale of real estate, or any lease thereof for longer than one year . . . unless the promise, contract, [or] agreement . . . be in writing and signed by the party to be charged therewith . . . ."

doctrine, upon delivery and acceptance of a deed[,] the deed extinguishes or supersedes the provisions of the underlying contract for the conveyance of the realty." *Burch v. Thomas*, 677 S.W.3d 827, 831 (Ky. App. 2023) (quoting *Drees Co. v. Osburg*, 144 S.W.3d 831, 832 (Ky. App. 2003)). As such, any alleged oral agreements that might have occurred between Jack and Jennifer merged into, and are superseded by, the Deed. Jack argues the merger doctrine has exceptions – "fraud, mistake, or contractual agreement[s] clearly not intended to be merged into the deed" – but none are applicable here. *See Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC*, 182 S.W.3d 529, 532 (Ky. App. 2005) (citation omitted). Jack does not allege fraud or mistake, nor is there a collateral written agreement (independent from the Deed) that the parties intended to keep separate. *See Burch*, 677 S.W.3d at 831-32. Again, "[i]t is presumed that the written agreement is final and complete and that all prior negotiations between the parties have either been abandoned or incorporated into the final written instrument." *New Life Cleaners v. Tuttle*, 292 S.W.3d 318, 322 (Ky. App. 2009) (citation omitted). Thus, the alleged oral agreement is not enforceable. Even viewing the record in a light most favorable to Jack, the circuit court did not err in dismissing his breach of contract claim.

The analysis varies for a *written* contract. "A contract written in clear and unambiguous language is not subject to interpretation or construction and must

-10-

be enforced according to its terms." *Big Sandy Co*., 545 S.W.3d at 844-45 (internal quotation marks and citation omitted). "The intention of parties to a written instrument must be gathered from the four corners of that instrument." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000) (citation omitted). "The fact that one party may have intended different results, however, is insufficient to construe a contract at variance with its plain and unambiguous terms." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 695 (Ky. 2016) (citing *Abney v. Nationwide Mut. Ins. Co*., 215 S.W.3d 699, 703 (Ky. 2006)). Here, the Deed conveys title of the Property from Jack to the Bishops for "love and affection" and reserves a life estate for Jack. The Deed is clear, straightforward, and unambiguous. As the Deed is unambiguous, we are bound by the terms of the Deed and must determine the intent of the parties from the four corners of that document. *See Hoheimer*, 30 S.W.3d at 178.

Jack argues the Deed was revocable *and* conditioned upon Jennifer assuming the entirety of the Property's debt, but the Deed did not contain either term. In fact, the Deed is an *inter vivos* gift. "An inter vivos gift is a voluntary transfer of property by one living person to another living person, without any valuable consideration, which is perfected and becomes absolute during the lifetime of the parties." *Howell v. Herald*, 197 S.W.3d 505, 507 (Ky. 2006) (internal quotation marks and citation omitted). A valid *inter vivos* gift requires:

(a) a competent donor; (b) an intention to make the gift; (c) a donee capable of taking it; (d) a complete gift with nothing left undone; (e) delivery of the property effective at once; and (f) an irrevocable gift. *Id.* (citation omitted). "If any of the elements of the gift are absent or incomplete, then the gift will fail." *Id.* "[T]he burden of establishing the gift rests on the party claiming it[.]" *Knox v. Trimble*, 324 S.W.2d 130, 132 (Ky. 1959) (citation omitted).

We turn to the elements required for a valid *inter vivos* gift. Here, the Bishops do not challenge Jack's competence. Next, Jack intended to make the gift. He admits he signed the Deed willingly, stated he intended to transfer title to help Jennifer with "taxes," and testified that she was "going to get the place regardless one of these days." Moreover, Kentucky jurisprudence recognizes that the common meaning, usage, and understanding of the phrase "in consideration of love and affection" – when that phrase is paired with nothing else and used in the context of a deed – unambiguously imparts a gift. *See, e.g.*, *Sword v. Fields*, 234 S.W. 202 (Ky. 1921) ("The transaction was in the nature of a gift, the only consideration being 'love and affection.'"); *Yates v. Wilson*, 339 S.W.2d 458, 461-62 (Ky. 1960) (equating recipient of unsolicited deed to a "gratuitous grantee," where deed in question recited that it was solely in consideration of "love and affection"); *see also Sparks Milling Co. v. Powell*, 143 S.W.2d 75, 77 (Ky. 1940) ("[W]here words having a definite legal meaning are knowingly used in a writing

-12-

the parties will be presumed to have intended such words to have their proper legal meaning in the absence of any contrary intention appearing in the instrument.").

Third, it is apparent the Bishops are capable of taking the gift.

Fourth, the gift was complete as Jack intended to transfer title in fee simple absolute.[4] Transfer of a gift can be actual, symbolic, or constructive; when the gift is constructively delivered, the relevant issue is the donor's intent. *Howell*, 197 S.W.3d at 508-09. Reservation of a life estate does not negate the "completeness" of the gift. *Id*. at 512 ("The reservation of a life estate in a deed signifies that the grantor believes he has parted with the land conveyed. It is an acknowledgement that the remainder interest has been disposed of, for otherwise the retention of a life estate would be unnecessary."). Here, the unambiguous Deed was, at a minimum, constructively delivered, and illustrates Jack's intent to transfer present title, thus making the gift complete.

Somewhat repetitively, the title was delivered to the Bishops and went into effect at once. When Jack initiated this suit, his complaint demanded the Bishops execute a quitclaim deed to return the remainder interest. Implicit in that demand is acknowledgment that the Deed was delivered; the Bishops accepted it;

---

[4] "A fee simple absolute estate is the largest estate that can be transferred in land . . . . There are no limitations of the estate expressed in the conveyance. This estate is a merger of both a present and future interest." *Establishing Fee Simple Determinable Title*, 118 Am. Jur. Proof of Facts 3d 125 § 2 (2024).

and title transferred to the Bishops. *Id.* at 512. Also, on appeal Jack acknowledges that he is "a life tenant who no longer holds the remainder interest in [the Property]." Again, all parties agree the Deed transferred title to the Bishops.

Lastly, the gift was irrevocable. Familial relationships create a presumption that a conveyance of real property – such as the one in question – is a gratuitous settlement, *i.e.*, an intended gift by virtue of the relationship. *Rakhman v. Zusstone*, 957 S.W.2d 241, 244 (Ky. 1997) (citations omitted). Once that presumption is established, the other party bears the burden of proving the conveyance was *not* a gift. *Id.* at 245 (citation omitted). To overcome that presumption, the donor must produce "the same quantum of evidence as is required to overcome any other rebuttable presumption." *Id.* (citation omitted). "[W]here property is conveyed as a gift, the transaction is by its very nature unilateral, and the grantee's intent or conduct (other than acceptance) plays no part in fixing the rights of the parties." *Twyford v. Huffaker*, 324 S.W.2d 403, 406 (Ky. 1958). Here, the title transfer is presumed to be a gift due to the consideration stated in the Deed, the transfer of title, and the familial relationship between Jack and Jennifer. *See Zusstone*, 957 S.W.2d at 244-45. Jack needed to overcome that rebuttable presumption but failed to do so. *See id.* at 245 (citation omitted). As Jack conveyed the Property as a gift, that transaction is unilateral, and Jennifer's intent

and conduct (other than acceptance) played no part in fixing the rights of the parties. *See Twyford*, 324 S.W.2d at 406.

Jack explicitly, in writing, gifted the Property in fee simple absolute to the Bishops without retaining a right of revocation or conditioned upon any financial obligations by the Bishops. To conclude otherwise would be to disregard the Deed's explicit language. "[A] court cannot make a contract for the parties, but can only construe the contract it finds they have entered into. Nor has the court the authority to read words into a contract." *Big Sandy Co.*, 545 S.W.3d at 847 (quoting *Alexander v. Theatre Realty Corp.*, 70 S.W.2d 308, 387-88 (Ky. 1934)). Thus, the Deed was an irrevocable *inter vivos* gift, and the circuit court did not err in dismissing Jack's claim that the Deed was a revocable, conditional gift.

Jack's third claim is one of unjust enrichment. To recover on a claim of unjust enrichment, Jack would have had to prove: (1) benefit conferred upon the Bishops at his expense; (2) a resulting appreciation of benefit by the Bishops; and (3) inequitable retention of that benefit without payment for its value. *See Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 777-78 (Ky. 2017) (internal quotation marks and citation omitted). Yet, under these circumstances, we need not analyze these elements. As unjust enrichment is rooted in equity and "law trumps equity," unjust enrichment is *unavailable* when the terms of an express contract control. *Id.* (citations omitted). Here, as

-15-

discussed, the Deed is an express, controlling contract that conveyed the Property to the Bishops. As previously stated, this controversy is a matter of law best addressed by contract principles. *See Furlong Dev., Co., LLC v. Georgetown-Scott Cnty. Plan. & Zoning Comm'n*, 504 S.W.3d 34, 39-40 (Ky. 2016).

Finally, Jack argues that the circuit court's directed verdict was procedurally improper (despite being the party who originally moved for the directed verdict). Even if we disagreed with the circuit court's decision to limit Jack's claims via directed verdict, any error would be harmless because it did not affect the substantial rights of the parties. *See* CR 61.01 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). In granting the Bishops' motion, the circuit court allowed the unjust enrichment claim to proceed, but only as to those alleged debts, expenses, and enrichments incurred post-deed, not the possessory interests addressed within the Deed. True, the directed verdict limited Jack's unjust enrichment claim, but that limitation was harmless because any unjust enrichment claim was doomed to fail in light of the aforementioned dispositive contractual principles. Thus, the circuit court did not err in dismissing Jack's unjust enrichment claim.

## CONCLUSION

Thus, we AFFIRM the judgments of the Madison Circuit Court.

ALL CONCUR.


BRIEF FOR APPELLANT:          BRIEF FOR APPELLEES:

Michael S. Fore               Rodney G. Davis
Isaac N. Claywell             Richmond, Kentucky
Richmond, Kentucky